ANTONIO RODRÍGUEZ CRUZ y OTROS, demandantes y recurridos, *v.* PEDRO A. PADILLA AYALA y OTROS, demandados y recurrentes.

*Número:* R-84-433 *Resuelto:* 12 de febrero de 1990

*Guillermo Mojica Maldonado* y *Jaime A. Rodríguez Lecoeur,* abogados de los recurrentes; *Eliezer Aldarondo Ortiz* e *Isabel*

*López Bras*, de *Aldarondo & López Bras*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El codemandante recurrido, Sr. Antonio Rodríguez Cruz, ocupó el puesto de carrera de Inspector de Saneamiento en el Departamento de Obras Públicas del Municipio de Trujillo Alto desde enero de 1977 hasta abril de 1979,[1] fecha en que fue nombrado Director de la Defensa Civil del pueblo de Trujillo Alto por el entonces Alcalde de dicho municipio, Hon. José A. Rivera Díaz.

El día 13 de enero de 1981, el Hon. Pedro A. Padilla Ayala —candidato del Partido Popular Democrático a la Alcaldía de Trujillo Alto en las Elecciones Generales celebradas en el 1980, y quien resultó vencedor en las mismas— asumió el cargo de Alcalde del referido municipio.

Mediante carta de fecha 29 de junio de 1983 el Alcalde Padilla le notificó al codemandante recurrido que, efectivo el día 30 de junio de 1983, cesaría en sus funciones de Director de la Defensa Civil del Municipio de Trujillo Alto, pudiendo reintegrarse al puesto de Inspector de Saneamiento que él antes ocupaba. En lo pertinente, y como fundamento de su acción, únicamente adujo el Alcalde Padilla que el puesto de director de la Defensa Civil era uno "de confianza" y, como tal, "el incumbente de ese puesto sirve a voluntad del Alcalde". Solicitud de revisión, pág. 2.

Con motivo de lo anteriormente señalado, el señor Rodríguez Cruz, su esposa Carmen Beatriz Vega y la sociedad le-

---

[1] El día 10 de enero de 1977 le fue extendido nombramiento de Inspector de Saneamiento con carácter probatorio y el 1ro de abril del mismo año se le concedió la permanencia.

La Sec. 6.8 del Reglamento de Personal del Municipio de Trujillo Alto dispone que toda persona nombrada para ocupar un puesto permanente de carrera estará sujeta a un período probatorio que no será menor de tres (3) meses ni mayor de un (1) año.

gal de gananciales compuesta por ambos, instaron demanda de *injunction*, daños y perjuicios y *mandamus*, debidamente jurada, ante el Tribunal Superior de Puerto Rico, Sala de Carolina, contra el Sr. Pedro Padilla Ayala, su cónyuge, su respectiva sociedad legal de gananciales y el Municipio de Trujillo Alto. En la misma, en síntesis, se alegó: que el puesto que ocupaba como Director de la Defensa Civil de Trujillo Alto el codemandante Rodríguez Cruz era uno de carrera y que éste fue separado del mismo sin celebración de vista ni procedimiento alguno; que éste siempre rindió una labor eficiente y óptima como director de dicha dependencia municipal y hasta el momento de los hechos su trabajo no había sido nunca criticado ni cuestionado por el Alcalde Padilla ni ningún otro personal del referido municipio; que el codemandante Rodríguez Cruz era simpatizante y miembro activo del Partido Nuevo Progresista y que durante los meses previos a las elecciones de 1980 hizo campaña activa a favor del P.N.P. y del candidato a alcalde por dicho partido, el Sr. José A. Rivera, y en contra del Partido Popular Democrático y del alcalde electo por dicho partido, Hon. Pedro A. Padilla Ayala; que otra persona militante del Partido Popular Democrático había pasado a ocupar la posición de la cual el codemandante Rodríguez Cruz fue destituido; que desde que asumió el poder el Alcalde Pedro A. Padilla, éste lo marginó, hostigándole, ignorándole y eliminándole personal de las oficinas de la Defensa Civil todo ello con el propósito de hacerle difícil e intolerable el descargo de sus funciones y forzar su renuncia, y que fue cesanteado de dicho cargo por el Alcalde Padilla debido exclusivamente a consideraciones de índole política.

A la luz de dichas alegaciones, la parte demandante solicitó del tribunal de instancia que declarase nula e ineficaz la destitución en controversia; con lugar la acción de *injunction* y *mandamus* contra el Alcalde Pedro A. Padilla; ordenase la reinstalación del codemandante Rodríguez Cruz al

puesto que ocupaba en dicho municipio como Director de la Defensa Civil, y prohibiese al Alcalde Padilla continuar violándole sus derechos constitucionales. En adición, se solicitó del tribunal de instancia que condenase al Alcalde Padilla en su carácter personal, a su respectiva sociedad legal de gananciales y al Municipio de Trujillo Alto a pagarle solidariamente a la parte demandante los haberes dejados de percibir, los daños y perjuicios ocasionádosle al codemandante Rodríguez Cruz, a su cónyuge y a su sociedad de gananciales, las horas extras trabajadas por el codemandante Rodríguez Cruz y no pagadas, así como las vacaciones acumuladas y no disfrutadas por éste. La parte demandada, en la contestación que radicara solicitando que se declarase sin lugar la demanda, en síntesis alegó que las actuaciones del Alcalde Padilla se ajustaban a la ley, constituyendo las mismas "el ejercicio legal y legítimo de sus deberes, facultades y prerrogativas" como Alcalde del Municipio de Trujillo Alto. *Exhibit* III, pág. 1.

Luego de celebrada la correspondiente vista evidenciaria, el tribunal de instancia dictó sentencia declarando con lugar la demanda radicada. Determinó, como cuestión de derecho, que "el puesto de Director de la Defensa Civil municipal es uno de carrera" y que la separación del codemandante Rodríguez Cruz de dicho puesto era una "contraria a derecho y nula" por razón de no haberse observado, en relación con dicho despido, "las garantías sobre retención contenidas en la Sección 4.6 de la Ley de Personal". *Exhibit* VII, págs. 12 y 14.

Procede que se enfatice, sin embargo, que el foro de instancia expresamente hizo constar en la sentencia que emitiera que aun cuando se considerara que el puesto de Director municipal de la Defensa Civil era uno "de confianza", el resultado del caso sería el mismo; ello en vista de su expresa determinación de hecho a los efectos de que la prueba presentada demostraba que "la separación del peticionario del

puesto de Director de la Defensa Civil y su ubicación en el Departamento de Saneamiento obedeció a motivaciones políticas" (*Exhibit* VII, pág. 15) y de que la parte demandada no presentó prueba alguna de que la afiliación política del demandante fuera un requisito apropiado para el desempeño efectivo del referido cargo.

En vista a las anteriores determinaciones y conclusiones, el tribunal de instancia dictó sentencia ordenando la reposición del codemandante Rodríguez Cruz al cargo de Director de la Defensa Civil del Municipio de Trujillo Alto. En adición, dicho foro condenó a la parte demandada a pagarle, en forma solidaria, al codemandante Rodríguez Cruz la suma de $30,000.00 "como indemnización total por los daños y perjuicios sufridos por éste" (*Exhibit* VII, pág. 18) como consecuencia del despido de que fuera objeto. El tribunal de instancia consideró aplicable a los hechos del caso las disposiciones de los Arts. 2, 4 y 6 de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 147, 149 y 151), por lo que condenó a la parte demandada al pago del doble de la suma antes mencionada de $30,000.00 y la cantidad de $5,000.00 por concepto de honorarios de abogado. Determinó el foro de instancia, además, que al no poder disfrutar el codemandante Rodríguez Cruz de sus vacaciones regulares durante varios años "por necesidades del servicio", éste era acreedor al pago de dichas vacaciones en exceso del término de sesenta (60) días que provee el Art. 10.07 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3357; razón por la cual el referido codemandante tenía derecho al pago de todas las vacaciones acumuladas y no disfrutadas. Por último, decretó el tribunal de instancia que el codemandante Rodríguez Cruz tenía derecho al pago de dos mil ciento cuarenta (2, 140) horas extras que había trabajado en exceso de la jornada regular de trabajo que contempla nuestro ordenamiento jurídico.

Inconforme con la sentencia dictada, la parte demandada acudió en revisión ante este Tribunal. En el recurso que a esos efectos radicara, plantea la parte demandada recurrente las siguientes "cuestiones de derecho":

1. Si el Puesto de Director de la Agencia Local de Defensa Civil del Municipio de Trujillo Alto es uno de carrera.

2. Si la acción de personal de reinstalar al demandante-recurrido en el puesto de carrera que ocupaba en el Municipio antes de ser Director de D.C. viola sus derechos constitucionales.

3. Si el Municipio de Trujillo Alto es un patrono de conformidad con la Ley 100 de 30 de junio de 1959, según enmendada, y dispuestas en dicha ley y si el demandante-recurrido tiene derecho a acumular y cobrar tiempo y medio por alegadas horas extras trabajadas.

4. Si el demandante-recurrido tiene derecho a cobrar 180 días de licencia regular acumulada al ser reinstalado en su puesto de carrera.

5. Si el demandante-recurrido tiene derecho a conservar el sueldo que percibía en el puesto de confianza de Director de Defensa Civil del Municipio de Trujillo Alto. Solicitud de revisión, pág. 5.

Expedimos el auto de revisión radicado. Posteriormente, y a la luz del contenido de los alegatos radicados por las partes, ordenamos la preparación de una exposición narrativa de la prueba que desfilara ante el tribunal de instancia. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

No obstante el tribunal de instancia haber incidido al resolver como cuestión de derecho que el cargo de Director de la Defensa Civil municipal que el recurrido Rodríguez Cruz ocupaba en el Municipio de Trujillo Alto era "uno de carrera" (*Exhibit* VII, pág. 12), *Navedo v. Municipio de Barceloneta*, 113 D.P.R. 421, 423 (1982), en vista de su expresa

determinación de hecho a los efectos de que la prueba presentada demostró que la destitución de éste "obedeció a motivaciones políticas" (*Exhibit* VII, pág. 15) y que la parte demandada no presentó prueba alguna de que la afiliación política del demandante recurrido fuera un requisito apropiado para el desempeño efectivo de dicho cargo, en atención a lo resuelto en el citado caso de *Navedo v. Municipio de Barceloneta*, ante, procede que examinemos minuciosamente la exposición narrativa de la prueba desfilada en el presente caso con el propósito de constatar si dicha determinación de hecho encuentra apoyo en la prueba presentada.

Debe mantenerse presente que en *Navedo v. Municipio de Barceloneta*, ante, resolvimos que el Director de la Defensa Civil municipal de un municipio de nuestro País puede ser despedido de dicho puesto sin formulación de cargos ni vista previa por ser éste *un empleado de confianza* conforme la Ley de la Defensa Civil de Puerto Rico(2) y la Ley de Personal del Servicio Público de Puerto Rico.(3) Apoyándonos en lo resuelto en *Ramos v. Srio. de Comercio*, 112 D.P.R. 514 (1982), *sin embargo*, expresamos que si dicho empleado de confianza alegaba y probaba que su despido se había debido a motivaciones políticas, el Estado venía en la obligación de demostrar que la afiliación político-partidista de dicho empleado era un requisito apropiado para el desempeño del referido cargo.

Recordaremos que en *Ramos v. Srio. de Comercio*, ante, no obstante extender a los empleados públicos de confianza la protección constitucional contra discrimen por razón de ideas políticas, reconocimos la existencia de ciertos cargos en que la afiliación política en particular del empleado

---

(2) Ley Núm. 22 de 23 de junio de 1976 (25 L.P.R.A. sec. 171 y ss.).

(3) 3 L.P.R.A. sec. 1350.

podría ser requisito necesario para el fiel desempeño de dichos cargos. En dicho caso *específicamente resolvimos* —siguiendo la doctrina establecida por el Tribunal Supremo de Estados Unidos en *Branti v. Finkel*, 445 U.S. 507, 515-516, 518 (1980)— que cuando un empleado de confianza que ha sido cesanteado *alega y presenta prueba* a los efectos de que su despido se debió a motivaciones políticas, recae sobre la autoridad nominadora el deber de desfilar prueba demostrativa de que la *afiliación política particular* del empleado es "*'requisito apropiado'* para el desempeño efectivo del cargo en cuestión, o sea, le corresponde establecer *la existencia* de intereses gubernamentales que son de importancia y jerarquía superior a los derechos del empleado bajo la Primera Enmienda" de la Constitución federal. (Énfasis suplido.) *Ramos v. Srio. de Comercio,* ante, pág. 516. Dicho de otra forma, habiéndose alegado y presentado prueba de discrimen político por un empleado público de confianza que ha sido cesanteado, por operación de la doctrina establecida en el caso de *Ramos v. Srio. de Comercio,* ante, *se transfiere a la autoridad nominadora (el Gobierno) el peso de la prueba.* Esto es, le corresponde al Estado *refutar* la prueba de discrimen político presentada(4) *o demostrar* que la afiliación política particular del empleado es requisito necesario para el desempeño efectivo del cargo en cuestión por razón de que dicho empleado de confianza participa en la formulación de política pública. Véase, en adición, *Clemente v. Depto. de la Vivienda,* 114 D.P.R. 763 (1983).

---

(4) A esos fines, a manera de ejemplo, podría presentar prueba que demuestre que: el testimonio o evidencia que tiende a establecer el discrimen político es falso o no confiable; que el empleado fue sustituido por otro de superior educación, preparación o experiencia; que el despido, o despidos, se debieron a válidas razones de índole administrativa como, por ejemplo, economías necesarias o evidencia de ineficiencia, falta de capacidad necesaria para ese puesto o descuido en el descargo de las funciones por parte del empleado, las cuales son motivos para prescindir válidamente de un funcionario de confianza. Véase *Colón v. C.R.U.V.,* 115 D.P.R. 503 esc. 1 (1984).

 Procede, en consecuencia, que nos cuestionemos cuál es la evidencia que un empleado público de confianza que ha sido cesanteado tiene que presentar para que, en virtud de lo resuelto en el caso *Ramos v. Srio. de Comercio*, ante, el peso de la prueba pase al Estado. En relación con este punto, cobra importancia lo resuelto en *Báez Cancel v. Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972).[5] En el mismo, en lo pertinente, expresamos:

> No se adujo justificación alguna para dejar cesantes a los recurrentes. Se recordará que el tribunal no adoptó la versión del Alcalde al efecto de que los recurrentes habían abandonado sus puestos y de que él nunca se había negado a darles empleo. Estamos de acuerdo que si se hubiera aducido alguna justificación razonable la cesantía no hubiese implicado discrimen alguno. *Pero cuando sin justificación razonable alguna se dejan* [sic.] *cesantes a un grupo de trabajadores de clara identificación política-partidista* [sic.] *e inmediatamente se le sustituye con otro grupo de diferente filiación partidista, como sucedió en el presente caso, se crea una fuerte presunción de discrimen.* Más a[ú]n cuando estos hechos ocurren justamente al cambio de una administración municipal a otra de distinto partido.
>
> Tampoco puede aceptarse el argumento de que el Alcalde tiene amplia discreción para emplear y despedir a los trabajadores irregulares. *El hecho de que estas facultades sean discrecionales no puede justificar, excusar o condonar el discrimen. El ejercicio de discreción no puede servir de mampara al discrimen.* De lo contrario, sería fácil evadir artificiosamente la prescripción constitucional.

---

[5] En dicho caso se trataba de empleados irregulares del Municipio de Guaynabo que fueron cesanteados luego de celebradas las elecciones generales de 1968 por el "nuevo" alcalde; esto es, un ejecutivo municipal perteneciente a un partido político diferente al que los había empleado. En dicho caso, la prueba presentada por los empleados demandantes consistió de *manifestaciones* que le hiciera el nuevo alcalde a dichos empleados sobre el hecho de que tenía que sustituirlos con su "propia gente" y del hecho que fueron *sustituidos* por otros empleados de la misma ideología del nuevo alcalde.

502

El *capricho*, sin embargo, no debe ser favorecido por la ley. *Por eso si no hay un motivo racional que justifique el despido y se sustituye al empleado por otro de diferente afiliación política, que resulta ser la misma del Alcalde, se crea una presunción de discrimen que el Alcalde viene obligado a refutar.* (Énfasis suplido.) *Báez Cancel v. Alcalde Mun. de Guaynabo,* ante, págs. 989–990.

En *McCrillis v. Aut. Navieras de P.R.,* 123 D.P.R. 113 (1989), aclaramos que la *mera alegación* de discrimen político *no activa* la "fuerte presunción, o inferencia, de discrimen" y que el demandante en esta clase de casos viene obligado *a establecer* la ausencia de motivo racional para el despido y la sustitución por otro empleado de diferente afiliación política que resulta afín con la de la autoridad nominadora. Expresamos, en adición, en dicho caso que el empleado de confianza despedido "[e]specíficamente, tiene el peso inicial de probar por preponderancia de la prueba que la conducta protegida fue el factor 'sustancial' o 'motivante' para la acción de despido". Íd., pág. 142.

En resumen, tenemos que —conforme el estado actual de nuestra jurisprudencia— cuando un empleado público de confianza que ha sido cesanteado *prueba* que no hay un motivo racional para su despido, que está identificado claramente con un partido político y que ha sido sustituido por una persona que pertenece a un partido distinto al suyo, el cual es el mismo de la autoridad nominadora, se establece un caso prima facie, o presunción, de discrimen político(6) y surge la aplicación de la doctrina de *Ramos v. Srio. de Comercio,* ante, mediante la cual se transfiere al Estado *el peso de la prueba* para que refute la evidencia de discrimen presentada o pruebe afirmativamente que la afiliación política es

_____

(6) Claro está, ello no impide que el empleado cesanteado presente prueba directa de discrimen político distinta a la señalada.

"requisito apropiado" para el desempeño efectivo del cargo en cuestión.(7)

_____

(7) Como hemos podido notar, las normas establecidas en los casos de *Ramos v. Srio. de Comercio,* 112 D.P.R. 514 (1982), *Báez Cancel v. Alcalde Mun. de Guaynabo,* 100 D.P.R. 982 (1972), y *McCrillis v. Aut. Navieras de P.R.,* 123 D.P.R. 113 (1989), son armonizables entre sí. En estos últimos, se nos informa qué prueba es la que el empleado público de confianza que ha sido cesanteado tiene que presentar para establecer un caso prima facie de discrimen político. En el caso de *Ramos v. Srio. de Comercio,* ante, se señala que establecido el caso prima facie, pasa al Estado el peso de la prueba, debiendo éste refutar la misma o demostrar que la afiliación política es requisito para el desempeño del cargo en controversia.

En relación con este segundo aspecto, en *McCrillis v. Aut. Navieras de P.R.,* ante, expresamos:

"En este tipo de casos donde el demandante alega que fue despedido de un empleo por razones políticas, el Estado puede, además de refutar la presencia de discrimen, demostrar que la posición que ocupaba el demandante está cubierta por una de las excepciones a la prohibición de despidos de empleados públicos por razones políticas. Procede entonces, examinar desde esa perspectiva las *responsabilidades del puesto* del demandante en detalle para determinar si éste se asemeja al de un diseñador de política pública, al de un copartícipe de información confidencial o al de algún otro funcionario cuyos deberes sean tales que la afiliación partidista sea igualmente un requisito adecuado. Al llevar a cabo esta investigación, es preciso considerar los *poderes inherentes a un puesto en particular, vis à vis* las funciones desempeñadas por el funcionario particular que ocupa ese puesto. Sobre este aspecto, los deberes anteriores y reales del empleado despedido no son pertinentes si el cargo esencialmente comprende poderes más amplios y funciones más importantes que tiendan a convertir la filiación política en un requisito adecuado para su desempeño efectivo."

En lo referente a este tema —esto es, la afiliación política como requisito para el desempeño del cargo de confianza— nuestra jurisprudencia hasta la fecha se ha limitado a examinar la situación en que dicha afiliación partidista es necesaria por razón de que el empleado de confianza participa en la formulación de política pública. Aun cuando ello no está planteado en el presente caso, estimamos conveniente hacer referencia a una jurisprudencia federal que establece que la afiliación política puede resultar ser un "requisito apropiado" para el desempeño de un puesto de confianza a pesar de que el empleado no participe en la formulación de política pública. Se trata, en síntesis, de empleados cuyas funciones están *íntimamente relacionadas* con la autoridad nominadora o la persona que formula política pública. A los mismos se les ha denominado "empleados confidenciales". Dentro de dicho grupo, entre otros, se encuentran las secretarias y choferes *personales.* A esos efectos, véanse: *Meeks v. Grimes,* 779 F.2d 417 (7mo Cir. 1985); *Vázquez Ríos v. Hernández Colón,* 819 F.2d 319 (1er Cir. 1987).

## II

Aclarados los anteriores extremos, procedemos a considerar el punto de si la prueba presentada por el demandante recurrido en instancia sostiene la expresa determinación del Tribunal Superior de Puerto Rico, Sala de Carolina, a los efectos de que el despido del demandante recurrido se debió a consideraciones político-partidistas.

De la exposición narrativa de la prueba, certificada como correcta por el tribunal de instancia, surge con meridiana claridad que el demandante Rodríguez Cruz demostró que no había "justificación razonable alguna" para el despido decretado. *Báez Cancel v. Alcalde Mun. de Guaynabo*, ante. A esos efectos destacamos el hecho de que las partes *estipularon* que la "capacidad e idoneidad del demandante para desempeñar el puesto de Director de la Defensa Civil no estaba en controversia".[8] En cuanto al segundo requisito establecido por nuestra decisión en *Báez Cancel v. Alcalde Mun. de Guaynabo*, ante, el demandante probó a la saciedad que era simpatizante y miembro del Partido Nuevo Progresista, siendo su afiliación política un hecho conocido por todos.[9] Por último, surge de la mencionada exposición narrativa de la prueba que el demandante recurrido presentó prueba —por conducto del testimonio oral del Sr. Roberto Bonilla Rivera, Presidente de la Asociación de Directores de la De-

---

[8] Véanse: pág. 6 de la Exposición Narrativa de la Prueba y Determinación de Hecho Núm. 8 de la sentencia recurrida.

[9] El demandante recurrido declaró que su afiliación política era del P.N.P.; que fue Comisionado Alterno de la Junta Local de Elecciones en Trujillo Alto en el año 1976, habiendo hecho campaña en dicho año a favor del candidato a alcalde por su partido José A. Rivera, y que su afiliación política la conocía "las cuatro esquinas del pueblo de Trujillo Alto". E.N.P., pág. 18. *El Alcade demandado, Pedro A. Padilla aceptó, durante su testimonio en corte, que conocía la afiliación política del demandante.*

fensa Civil de Puerto Rico—(10) a los efectos de que la destitución del demandante Rodríguez Cruz se debió a que éste no era de la confianza del Alcalde Padilla por no pertenecer al partido político al cual pertenecía el referido alcalde.(11) En adición a lo anteriormente expresado, el demandante recurrido presentó prueba que demuestra que *inmediatamente* que el demandado Padilla asumió el cargo de Alcalde del Municipio de Trujillo Alto, éste comenzó una *campaña de hostigamiento* contra él, consistente la misma en que no le invitaba a las reuniones de jefes de departamento del Municipio de Trujillo Alto *y que le eliminó todo el personal que él tenía bajo sus órdenes.*

La prueba de la parte demandada —consistente únicamente del testimonio oral del codemandado Pedro A. Padilla, Alcalde de Trujillo Alto— *no* refutó la evidencia de discrimen político presentada por la parte demandante. Tampoco la parte demandada presentó prueba alguna con el propósito de demostrar que la afiliación política del Director de la Defensa Civil del Municipio de Trujillo Alto era un requisito apropiado o necesario para el desempeño del referido cargo. El Alcalde Padilla, en el testimonio oral que prestara, se limitó a expresar su criterio de que el puesto de Director

---

(10) Dicha asociación, conforme el testimonio del señor Bonilla, *no* es controlada por partido político alguno. La misma se compone de *todos* los directores municipales de la Defensa Civil, independientemente de su afiliación política. Véase pág. 7 de la Exposición Narrativa de la Prueba. *Procede que se enfatice el hecho de que el señor Bonilla Rivera es miembro del mismo partido político al que pertenece el Alcalde Pedro A. Padilla; esto es, al Partido Popular Democrático.*

(11) Según surge de las págs. 7 y 8 de la Exposición Narrativa de la Prueba, el señor Bonilla Rivera declaró que en una reunión que sostuviera con el Alcalde Padilla —motivada la misma por los "problemas" que estaba teniendo el demandante con el referido alcalde— éste le informó: "Bonilla tú sabes de esto. Don Antonio no es de mi confianza, ni es de mi partido y tienes que entender que lo tengo que mover, tengo que poner una persona de mi partido . . . ."

de la Defensa Civil era uno de confianza.[12] Forzosa es la conclusión, en consecuencia, de que, en virtud de lo resuelto en los antes citados casos de *Ramos v. Srio. de Comercio*, ante, y *Báez Cancel v. Alcalde Mun. de Guaynabo*, ante, no cometió error el tribunal de instancia al determinar que la destitución del codemandante Rodríguez Cruz del cargo de Director de la Defensa Civil de Trujillo Alto se debió a motivaciones puramente políticas. Dicha determinación, aparte del hecho indiscutible de que encuentra amplio apoyo en la prueba presentada, merece deferencia en vista del hecho de que en el presente caso no están presentes las circunstancias extraordinarias —de error manifiesto, pasión, prejuicio o parcialidad— que permiten descartarla. *Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583, 608 (1982).

### III

Determinado que en efecto la destitución aquí en controversia obedeció a motivaciones político-partidistas, procedemos a considerar los restantes señalamientos de error.

---

[12] Véase págs. 27 a 33 de la Exposición Narrativa de la Prueba. En lo referente a la destitución del codemandante Rodríguez Cruz, el Alcalde Padilla se limitó a expresar que antes de

". . . remover a Don Antonio consulté con el Director de la Defensa Civil Estatal. Yo llamé al Director Estatal de la Defensa Civil y le comuniqué mi determinación, conforme a la ley y la Ordenanza, de que por cuestiones de confianza remover a Don Antonio a su posición anterior puesto de carrera en el municipio como Inspector de Saneamiento, salvaguardando los derechos que le asisten a él conforme a la ley de personal sobre ese particular, y que una vez cumplimentara [sic] ese proceso, conforme lo dispone la ley, me reuniría con él, como Director de la Defensa Civil a los fines de comenzar el cambio de impresiones correspondientes para tomar la determinación con relación a la persona que iba a ocupar el cargo. Me comuniqué con él, le indiqué la determinación que iba tomar, conversamos sobre el alcanze [sic.] de la ley, la Ordenanza, y a esos fines el me indicó . . . (objeción).

"No me he reunido con Don Antonio para pedirle la renuncia. Escuché testificar al señor Rodríguez. Desde el momento en que asumimos el cargo de Alcalde siempre estuvimos claros sobre ese particular —en el sentido de que era un puesto de confianza, y a Don Antonio le asistía un derecho de reinstalación, que no tenía necesidad de solicitar la renuncia del Director." E.N.P., pág. 28.

 Los demandados recurrentes —aun cuando no cuestionan en sí la determinación del tribunal de instancia condenándolos a pagar la partida de $30,000.00 fijada por dicho foro como indemnización por los daños, sufrimientos y angustias mentales sufridos por el demandante Rodríguez Cruz— sostienen que erró el Tribunal Superior de Puerto Rico, Sala de Carolina, al resolver que el Municipio de Trujillo Alto es un "patrono" a los fines de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151, y condenar, en consecuencia, al Alcalde Padilla y al Municipio de Trujillo Alto a satisfacer al demandante Rodríguez Cruz, en forma solidaria, el *doble* del importe de los daños que determinó que le habían causado. La referida Ley Núm. 100, como es sabido, impone responsabilidad civil "por una suma igual al doble del importe de los daños que el acto haya causado" a todo *patrono* que despida, suspenda o discrimine contra un empleado suyo por, entre otras razones, ideas políticas.(18)

 El Art. 6(2) de la citada Ley Núm. 100 establece que el término "patrono" según se emplea en dicha ley "in-

---

(18) El Art. 1 de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146) dispone en lo pertinente:

"Todo *patrono* que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status como empleado, por razón de edad, según ésta se define más adelante, raza, color, sexo, origen social o nacional, condición social, *ideas políticas* o religiosas del empleado o solicitante de empleo:

"(a) incurrirá en responsabilidad civil

"(1) por una suma igual *al doble del importe de los daños* que el acto haya causado al empleado o solicitante de empleo." (Énfasis suplido.)

En *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193 (1988), se resolvió que la palabra "daños", según se utiliza en la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151, se refiere a todos los daños sufridos por la víctima incluyendo daños y angustias mentales en aquellos casos en que se pruebe su existencia.

cluye a *toda persona natural o jurídica* que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas". (Énfasis suplido.) 29 L.P.R.A. sec. 151(2).

El tribunal de instancia entendió que teniendo el Municipio de Trujillo Alto, como todos los municipios de Puerto Rico, "personalidad legal separada e independiente del Gobierno del Estado Libre Asociado",(14) el mismo caía bajo la definición de "patrono" que provee el Art. 6 de la Ley Núm. 100, ante, por cuanto se trata de una "persona jurídica" que emplea trabajadores.

El historial legislativo de la Ley Núm. 100, ante, revela que su objetivo principal es proteger a los empleados de la *empresa privada* contra todo tipo de discrimen aun cuando, *por excepción,* se extiende la protección a los empleados de las agencias o instrumentalidades del Gobierno que operan como negocios o empresas privadas.(15) De ma-

---

(14) La Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 2001 y ss.) dispone en su Art. 2.01 lo siguiente: "Se crea una entidad política y jurídica conocida como municipio que incluye los habitantes residentes dentro de sus límites territoriales, con plenas facultades legislativas y administrativas en todo asunto que fuere de naturaleza municipal, con sucesión perpetua, *existencia y personalidad legal separada e independiente del Gobierno del Estado Libre Asociado de Puerto Rico.* El municipio quedará constituido y se regirá por las disposiciones de este subtítulo." (Énfasis suplido.) 21 L.P.R.A. sec. 2051.

(15) Véase 12 Diario de Sesiones de la Asamblea Legislativa (Senado), T. II, págs. 681–688 (1959). Refiriéndose al Sust. al P. del S. 331 que se convirtió en la Ley Núm. 100 de 1959 expresó el Senador García Méndez durante los debates que tuvieron lugar al considerarse su aprobación: "Aquí se trata de hacerle justicia a los empleados de las *empresas privadas* y de las agencias o instrumentalidades *que operan como empresas privadas.*" (Énfasis suplido.) Diario de Sesiones, ante, pág. 688.

nera que solamente de estar los municipios comprendidos dentro del concepto "agencias o instrumentalidades del gobierno que oper[a]n como negocio o empresa privada", 29 L.P.R.A. sec. 151(2), les serían aplicables las disposiciones de la Ley Núm. 100, ante.

De los debates habidos en el Senado de Puerto Rico en torno a la aprobación del Sust. al P. del S. 331, que se convirtió en la Ley Núm. 100, ante, se desprende que algunos senadores tenían dudas sobre cuáles instrumentalidades del Gobierno estaban incluidas dentro de la frase "agencias o instrumentalidades del gobierno que oper[a]n como negocio o empresa privada" del Art. 6 de la Ley Núm. 100, ante. De las discusiones que tuvieron lugar al plantearse dicho asunto surge que se entendía que la frase se refería a corporaciones públicas del Gobierno de Puerto Rico. Así se mencionan específicamente, como ejemplo de instrumentalidades del Gobierno cubiertas por la ley, a la Autoridad de las Fuentes Fluviales y la fábrica de piñas de la Autoridad de Tierras.(16)

No hay indicio alguno en el historial legislativo de esta ley de que la intención de los legisladores al aprobarla fuera hacerla aplicable a los municipios; más bien parece ser todo lo contrario ya que una enmienda propuesta a la definición de "patrono" del citado Art. 6 de la Ley Núm. 100, ante, a los fines de extender la protección de la ley a todos los empleados del Gobierno, fue derrotada.(17)

---

(16) Véase Diario de Sesiones, ante, pág. 684. Refiriéndose a la disposición "incluirá aquellas agencias o instrumentalidades del gobierno que operen como negocios o empresas privadas" señaló el señor Colón Castaño: "Se refiere a, por ejemplo, la fábrica de piñas, de la Autoridad de Tierras, pero no a un empleado que pueda coger una de las distintas agencias u oficinas del Gobierno." Más adelante a la pág. 685 expresó el señor Negrón López: "Ahí, entiendo yo, están cubiertas todas las corporaciones públicas de toda índole del gobierno de Puerto Rico."

(17) La enmienda propuesta a la definición de "patrono" del Art. 6 de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 151) consistía en *eliminar* la

 Los municipios son "entidades jurídicas y políticas" creados por la Asamblea Legislativa al amparo del poder que le concede la Constitución del Estado Libre Asociado en su Art. VI, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 362, para "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función".(18) Estos son, no obstante, parte integral del Gobierno como un todo.(19)

 La razón de ser y finalidad principal de los municipios es "satisfacer las necesidades públicas y propias de la comunidad local". El municipio "es un ente mediante el cual el Estado puede atender de manera más efectiva 'el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular'". *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 705, 709 (1988). La función del municipio dentro de nuestro esquema de Gobierno es tan importante que no podemos atribuirle al legislador la intención de hacerle aplicable las disposiciones de la Ley Núm. 100, ante, en ausencia de una clara expresión legislativa. Además, atendido el propósito para el cual existe un "municipio" no puede sostenerse que el mismo opera como un negocio o empresa privada según el

---

frase "que operen como negocios o empresas privadas". La misma fue derrotada luego de discusión por entenderse que las disposiciones de esta ley podrían confligir con, entre otras, leyes aplicables a empleados del Gobierno, la Ley de Personal del Servicio Público de Puerto Rico. Obsérvese que la Ley de Personal es aplicable a los municipios y que los empleados de agencias o instrumentalidades del Gobierno que funcionan como empresas o negocios privados están expresamente excluidos de las disposiciones de la Ley de Personal (3 L.P.R.A. secs. 1311 y 1338).

(18) Véase Art. 2.01 de la Ley Orgánica de los Municipios de Puerto Rico, ante.

(19) Exposición de Motivos, Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980, Leyes de Puerto Rico 601–602.

significado usual y corriente de estos términos.[20] Un "municipio" no opera con fines de lucro como los negocios privados sino con fines de servicio público. Tampoco constituye una corporación pública.

Resolvemos, en consecuencia, que la referida Ley Núm. 100 *no* es aplicable a los municipios. Erró, por tanto, el tribunal de instancia al imponer responsabilidad civil a los demandados por el *doble* del importe de los daños causados al demandante.

Ello no dispone, sin embargo, totalmente del planteamiento sobre la concesión de daños en el presente caso. Este Tribunal nunca se ha expresado sobre la procedencia jurídica de daños por sufrimientos y angustias mentales como consecuencia de un despido por discrimen político dentro del contexto del servicio público. Como expresamos anteriormente, sorprendentemente la parte recurrente en el recurso de revisión que radicara no cuestiona directamente la concesión por el tribunal de instancia a la parte demandante de la suma de $30,000.00 por dicho concepto.

No obstante nuestro sistema de derecho ser uno rogado y de carácter adversativo, hemos resuelto que con el propósito de hacer la mejor justicia de que somos capaces, aun cuando la parte recurrente no lo señale o no lo levante

---

[20] La Ley Núm. 100, ante, no define el término "negocio" ni "empresa privada", por lo que debe atenderse a su significado ordinario. El *Diccionario General Ilustrado de la Lengua Española Vox*, 3ra ed., Barcelona, Bibliograf S.A., 1973, define la palabra "negocio" como "cualquier ocupación en la que se emplea trabajo, atención o tiempo, *especialmente la hecha por lucro o interés"*. Véase *Arecibo Bldg. Corp. v. Mun. de Arecibo*, 115 D.P.R. 76, 78 (1984).

El *Diccionario de la Lengua Española*, 19na ed., Madrid, Ed. Espasa-Calpe, 1970, pág. 518, da la siguiente definición de la palabra "empresa": "Entidad integrada por el capital y el trabajo, como factores de la producción y dedicada a actividades industriales, mercantiles o de prestación de servicios con *fines lucrativos* y con la consiguiente responsabilidad." (Énfasis suplido.)

como error, este Tribunal entenderá en todas aquellas cuestiones que a su juicio ameritan ser consideradas y resueltas en un recurso. *Dávila v. Valdejully*, 84 D.P.R. 101 (1961). Ello nos obliga a entender, motu propio, en dicho punto.

Se hace *innecesario*, sin embargo, que nos expresemos sobre la juridicidad de la concesión de indemnización por concepto de las angustias y sufrimientos mentales con motivo del despido de un empleado público. Ello es así por cuanto un examen minucioso de la exposición narrativa de la prueba presentada en el presente caso revela que la parte demandante no presentó prueba que sostenga la concesión de indemnización por dichos daños. Procede, por tanto, ordenar la eliminación de dicha partida.

## IV

Desde su ingreso al servicio municipal el 10 de enero de 1977 hasta el 10 de enero de 1984, el demandante recurrido disfrutó de vacaciones únicamente por un período de treinta (30) días.[21] El tribunal de instancia determinó que ello se debió a necesidades del servicio y que siendo así el demandante recurrido tenía derecho al *pago* de ciento ochenta (180) días por concepto de vacaciones acumuladas y no disfrutadas.[22]

Los demandados recurrentes sostienen que erró el tribunal de instancia al ordenar el pago de ciento ochenta (180) días de vacaciones porque el expediente de personal del de-

---

[21] Del expediente de personal del demandante recurrido —según declaración de la testigo Luz Celenia Rivera, custodio del mismo— surge que sólo tomó vacaciones del 5 de julio de 1983 al 18 de agosto de 1983. Véase, también, Determinación de Hecho Núm. 17.

[22] El demandante recurrido debió disfrutar de treinta (30) días de vacaciones al año para un total de doscientos diez (210) días. Habiendo tomado treinta (30) días de vacaciones ello arroja un sobrante de ciento ochenta (180) días.

mandante recurrido no contiene evidencia de que éste haya solicitado vacaciones y que le hayan sido negadas, y aunque así fuere éste solamente tendría derecho al pago de un máximo de sesenta (60) días y a disfrutar del exceso, pero no a cobrarlo.

Debemos señalar en primer lugar que la prueba que tuvo ante sí el tribunal de instancia sostiene su determinación de que el demandante recurrido no disfrutó de la licencia de vacaciones a la cual tiene derecho anualmente debido a necesidades del servicio.[23] Tomando esto en cuenta, examinemos la disposición estatutaria de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 2001 y ss., que garantiza el derecho a disfrutar de licencia de vacaciones a todo empleado de carrera y *funcionario* municipal.[24] Dispone el Art. 10.07 de la Ley Orgánica de los Municipios de Puerto Rico, ante, en lo pertinente:

---

[23] El anterior Alcalde de Trujillo Alto, José A. Rivera, declaró que de 1979 a enero de 1981 el demandante recurrido le solicitó vacaciones y que nó se las concedió por razones del volumen de trabajo pendiente. El demandante recurrido declaró que en anteriores ocasiones y en particular el día 4 de noviembre de 1981 le solicitó vacaciones al Alcalde Padilla y que las mismas le fueron negadas.

[24] El Director de la Defensa Civil municipal es un "funcionario" para los fines del Art. 10.07 (21 L.P.R.A. sec. 3357) de la Ley Orgánica de los Municipios de Puerto Rico.

El Art. 1.02 (21 L.P.R.A. sec. 2001) de dicha ley dispone .que el término "funcionario" según se emplea en la misma se refiere a los cargos mencionados en 21 L.P.R.A. sec. 2055 y sus incumbentes. Conforme 21 L.P.R.A. sec. 2055(b) son funcionarios del municipio, entre otros, los "Directores de las unidades administrativas de la rama ejecutiva". La Agencia Municipal de Defensa Civil de Trujillo Alto es una unidad administrativa de la Rama Ejecutiva.

El Art. 2.03 (21 L.P.R.A. sec. 2053(c)) dispone que "[s]in perjuicio de las facultades del Alcalde y de la Asamblea Municipal para crear, eliminar, consolidar y *establecer otras*, la rama ejecutiva municipal estará compuesta de *unidades administrativas tales como Oficina del Alcalde, Finanzas, Beneficiencia Pública, Obras Públicas y Secretaría Municipal*".

Cumpliendo con el mandato impuéstole a todos los municipios del Estado Libre Asociado en el Art. 16 de la Ley de la Defensa Civil de Puerto Rico, 25 L.P.R.A. sec. 171o, de establecer una Agencia Municipal de la Defensa Civil, el Municipio de Trujillo Alto mediante la Ordenanza Núm. 13 de 12 de septiembre de 1980 creó la Agencia Municipal de Defensa Civil adscrita a la Oficina del Alcalde.

*Sec. 3357. Licencias*

(a) *De vacaciones y por enfermedad.—Todos los emplea-*
*dos de carrera y funcionarios tendrán derecho a licencia de*
*vacaciones a razón de dos días y medio (2½) por cada mes de*
*servicio* y a licencia por enfermedad a razón de un día y medio
(1½) por cada mes de servicio, excluyendo sábados, domingos
y días feriados. *La licencia de vacaciones se podrá acumular*
*hasta un máximo de sesenta (60) días laborables* y la licencia
por enfermedad se podrá acumular hasta un máximo de no-
venta (90) días a la terminación del año natural. La autoridad
nominadora, en consulta con los empleados, determinará la
fecha en que éstos disfrutarán de sus vacaciones anuales den-
tro del transcurso de cada año, en la forma que fuere más
compatible con las necesidades del servicio. Disponiéndose,
que cada empleado tendrá derecho a disfrutar de vacaciones
durante un período de no menos de quince (15) días consecu-
tivos.

*Los empleados que no puedan disfrutar de licencia de va-*
*caciones durante determinado año natural por necesidades*
*del servicio y a requerimiento de la autoridad nominadora,*
*están exceptuados de las disposiciones precedentes.*

*En este caso, el municipio deberá proveer para que el em-*
*pleado disfrute de por lo menos el exceso de licencia acumu-*
*lada sobre el límite de sesenta (60) días en la fecha más*
*próxima posible dentro del término de los primeros seis (6)*
*meses del siguiente año natural.*

*Al renunciar a su puesto, o a la separación del servicio por*
*cualquier causa, todo funcionario o empleado municipal ten-*
*drá derecho a percibir, y se le pagará, una suma global de*
*dinero por la licencia de vacaciones que tuviere acumulada a*
*la fecha de su separación del servicio hasta un máximo de*
*sesenta (60) días laborables.* (Énfasis suplido.)

█ De una lectura de la transcrita disposición legal se
desprende, en cuanto a lo que nos concierne, que: todos los
empleados de carrera y funcionarios tienen derecho a disfru-
tar de una licencia de vacaciones de dos días y medio (2½)
por cada mes de servicio; que como norma general, la licen-
cia de vacaciones se puede acumular hasta un máximo de
sesenta (60) días laborables salvo que el empleado no pueda

disfrutar de la misma durante determinado año natural por necesidades del servicio, en cuyo caso puede acumular también el exceso de sobre sesenta (60) días que tenga por concepto de licencia de vacaciones no utilizadas; que en tal situación el municipio tiene el deber de proveer para que el empleado disfrute, de por lo menos, el exceso de licencia acumulada sobre el límite de sesenta (60) días en la fecha más próxima posible dentro de los primeros seis (6) meses del siguiente año natural.

En vista de lo dispuesto en el transcrito Art. 10.07 de la Ley Orgánica de los Municipios de Puerto Rico, ante, forzoso es concluir que el demandante recurrido tenía derecho a una licencia de vacaciones de treinta (30) días al año y que, habiendo sido negado el disfrute de la misma por necesidades del servicio, acumuló la totalidad de la licencia de vacaciones devengada y no disfrutada.

▮ Las vacaciones "han sido instituidas con el propósito de permitir a los empleados un período de descanso para reponer las fuerzas físicas y mentales agotadas en el período de trabajo y compartir ratos de tranquilidad y sosiego con sus familias". *Ramos Villanueva v. Depto. de Comercio*, 114 D.P.R. 665, 666 (1983); *Rivera Maldonado v. Autoridad Sobre Hogares*, 87 D.P.R. 453, 456 (1963). El Municipio de Trujillo Alto incumplió con el deber que le impone de manera expresa el Art. 10.07 de la Ley Orgánica de los Municipios de Puerto Rico, ante, de proveer para que el empleado que acumula en exceso de sesenta (60) días de vacaciones por necesidades del servicio disfrute de las mismas dentro de los primeros seis (6) meses del próximo año natural. Ese hecho *no* debe perjudicar al demandante recurrido toda vez que no debemos penalizarle por la falta de diligencia del municipio. Además, de otro modo el municipio se beneficiaría del incumplimiento de su deber.

Ahora bien, somos del criterio que el párrafo cuarto del citado Art. 10.07 de la Ley Orgánica de los Municipios de Puerto Rico, ante, el cual dispone el pago en efectivo de una suma global de dinero por la licencia de vacaciones acumulada hasta un máximo de sesenta (60) días laborables en caso de renuncia o separación del servicio, *no* es aplicable a la situación del aquí demandante recurrido ya que éste *no ha sido separado del servicio municipal*. Si bien es cierto que fue *separado del cargo* de Director de la Defensa Civil, éste fue *reinstalado simultáneamente* al puesto de Inspector de Saneamiento que antes ocupaba en el municipio. De manera que la separación del cargo no conllevó la desvinculación del servicio. Continuó y continúa en el servicio municipal. *Resolvemos que solamente procede la liquidación de las vacaciones acumuladas mediante el pago en efectivo de las mismas cuando la renuncia o separación del servicio produce la desvinculación del empleado del servicio.*(25) No siendo esta la situación del caso ante nos, *incidió*

---

(25) Así ha sido interpretado reiteradamente por el Secretario de Justicia el Art. 2 de la Ley Núm. 125 de 10 de junio de 1967 (3 L.P.R.A. sec. 703a) que dispone en lo pertinente: "Todo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades y corporaciones públicas, tendrá derecho a que se le pague y se le pagará una suma global de dinero por la licencia de vacaciones que tuviere acumuladas hasta un máximo de sesenta (60) días laborables a su *separación del servicio por cualquier causa . . .*"

En la Opinión del Secretario de Justicia Núm. 6 de 1971 se expresó lo siguiente: "Aunque el artículo 2 de dicha Ley Núm. 125 de 10 de junio de 1967, incluye la renuncia como una de las formas de separación del servicio, a los fines del pago global autorizado por dicha ley, es razonable interpretar, dado el tenor general de dicha ley, que la renuncia a que se refiere la misma es aquella que produce la desvinculación, no de un puesto para pasar a otro, sino la *desvinculación total y absoluta del empleado del servicio gubernamental; requisito previo e indispensable para que pueda proceder dicho pago.*" (Énfasis suplido.) Véanse, además: Op. Sec. Just. Núm. 1978-1 y Núm. 1978-6; Op. Sec. Just. Núm. 1979-22; Op. Sec. Just. Núm. 1982-16.

Debemos señalar, además, que esta es la única interpretación cónsona con la naturaleza del pago de vacaciones. En *Ramos Villanueva v. Depto. de Comercio,* 114 D.P.R. 665, 666 (1983), dijimos: "[E]l pago por vacaciones no representa com-

el tribunal de instancia al ordenar *el pago* de ciento ochenta (180) días por concepto de vacaciones no disfrutadas. El demandante recurrido tiene derecho, sin embargo, *al disfrute* de ciento ochenta (180) días de vacaciones con paga.

## V

Nos resta considerar la procedencia del pago de *horas extras* al demandante recurrido. En su sentencia, el tribunal de instancia ordenó a los demandados recurrentes compensar al demandante recurrido las horas trabajadas por éste fuera de su horario regular atendiendo emergencias o desastres cuando ocurrían, participando en seminarios de capacitación así como asistiendo a reuniones periódicas con miembros de la comunidad o de los cuerpos de voluntarios.[26]

Se basó el tribunal de instancia en el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, que establece el derecho de *todo trabajador* a una jornada ordinaria que no exceda de ocho (8) horas de trabajo y dispone que sólo podrá trabajarse en exceso de este límite mediante compensación extraordinaria que nunca será menor de una y media vez el tipo de salario

---

pensación adicional al sueldo, sino que es el equivalente del sueldo pagado mientras se descansa." En dicho caso revocamos una resolución del tribunal de instancia que ordenaba a los allí demandados recurrentes pagar al demandante recurrido las vacaciones acumuladas durante el período del despido ilegal porque habiéndosele pagado todos los salarios dejados de percibir mientras estuvo cesante en su trabajo dicho pago incluyó tanto los períodos que hubiera trabajado como los que hubiera descansado en vacaciones.

[26] El tribunal de instancia determinó que entre el período del 16 de abril de 1979 al 30 de junio de 1983 el demandante recurrido trabajó diez (10) horas extras por semana para un total de dos mil ciento cuarenta (2,140) horas y que siendo su salario mensual $750.00 (4.615 por hora a base de 162.5 horas por mes) el municipio le adeudaba $9,876.10. Véase Determinación de Hecho Núm. 19. En la parte dispositiva de la Sentencia ordenó el pago de tiempo y medio por las horas extras trabajadas.

518

ordinario([27]) y lo resuelto en *Municipio de Guaynabo v. Tribunal Superior*, 97 D.P.R. 545 (1969).

Sostienen los demandados recurrentes que erró el tribunal de instancia al ordenar el pago de horas extras porque el demandante recurrido es un funcionario municipal y como tal no tiene derecho a ser compensado por las horas extras que trabaje.

Respecto al derecho de empleados públicos al pago de horas extras examinamos, en primer lugar, la aplicabilidad *a los hechos de este caso* de las disposiciones del *Fair Labor Standard Act*, 29 U.S.C. sec. 201 *et seq.* Recordaremos que el recurrido Rodríguez Cruz se desempeñó como Director de la Defensa Civil del Municipio de Trujillo Alto *desde el mes de abril de 1979 hasta el 30 de junio de 1983*, término de tiempo durante el cual, alegadamente, trabajó las horas extras que reclama. *En vista del período de tiempo al que se contrae su reclamación, forzoza es la conclusión de que las disposiciones del citado estatuto federal no son de aplicación al caso de autos.* Veamos por qué.

En el caso de *National League of Cities v. Usery*, 426 U.S. 833 (1976), el Tribunal Supremo de los Estados Unidos reconoció la existencia de unas áreas laborales en que los empleados desempeñaban funciones "tradicionalmente gubernamentales" (*traditional governmental functions*) las que necesariamente, según dicho Foro en aquel entonces, tenían que estar exentas de las disposiciones del *Fair Labor Standard Act*. Ello, naturalmente, eximía de las disposi-

---

([27]) El Art. II, Sec. 16 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 327, lee:

"Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. *Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley.*" (Énfasis suplido.)

ciones del referido estatuto federal a los empleados municipales en Puerto Rico, en cuanto al pago por concepto de horas extras, que trabajaran en exceso de cuarenta (40) horas semanales.(28)

Dicha norma jurisprudencial fue expresamente revocada por el Tribunal Supremo federal en el año de 1985 mediante la decisión que emitiera en *García v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). En virtud de lo resuelto en *García v. San Antonio Metro. Transit Auth.*, el Congreso de los Estados Unidos promulgó el 14 de noviembre de 1985 las denominadas "Enmiendas al F.L.S.A. de 1985"(29) mediante las cuales *expresamente extendió la aplicación de la ley a los empleados estatales y municipales.* Para instrumentar estas enmiendas y las ya vigentes disposiciones de ley pertinentes, se aprobó una reglamentación concerniente a la manera en que se implantaría el F.L.S.A. a los empleados del sector público, 29 C.F.R. 553.1 *et seq.* (1987).(30) Bajo la Sec. 203(c) de la ley, 29 U.S.C. sec. 203(c), se dispone que ésta aplicará a *"any territory or possession".* Asimismo bajo la definición de "Estado" en la Sec. 553.1(d), 29 C.F.R. 553.1(d), expresamente se incluyó a Puerto Rico. *En este sentido las disposiciones de la Ley son —con posterioridad a 1985—*(31) *perfectamente aplicables a los em-*

---

(28) Este análisis de *National League of Cities v. Usery*, 426 U.S. 833 (1976), fue incorporado en Puerto Rico por los Tribunales Federales en *Alamo v. Autoridad de Comunicaciones de Puerto Rico*, 569 F. Supp. 1434 (D.C. P.R. 1983), y *Enrique Molina-Estrada v. Puerto Rico Hwy. Auth.*, 680 F.2d 841 (1er Cir. 1982).

(29) Ley Pública Núm. 99-150 de 14 de noviembre de 1985, 1985 U.S. Code Cong. & Admin. News (99 Stat.) 787, efectiva el 15 de abril de 1986.

(30) "The purpose of Part 553 is to set forth the regulations to carry out the provisions of these Amendments, as well as other FLSA provisions previously in existence relating to such public agency employees." 29 C.F.R. 553.2(a).

(31) Respecto a este punto la jurisprudencia federal —posterior a *García v. San Antonio Metro. Transit Auth.*, 838 F.2d 1411 (5to Cir. 1988)— nos es de gran

*pleados públicos de Puerto Rico; no, sin embargo, al presente caso por razón del período de tiempo al cual se contrae su reclamación.*

En lo que respecta a la esfera local, tenemos que la Ley Núm. 379 de 15 de mayo de 1948, según enmendada[32] —conocida como la Ley sobre Horas y Días de Trabajo, la cual establece la "jornada legal de trabajo" en nuestro País— mediante las disposiciones de su Art. 16[33] exime de la aplicación de la referida ley "a *los empleados* del Gobierno Estatal, *de los Gobiernos Municipales* . . .". (Énfasis suplido.) Por otro lado, las disposiciones de la Ley de Salario Mínimo de Puerto Rico, según enmendada,[34] tampoco son aplicables a las "personas empleadas por los gobiernos municipales" por disposición expresa de la referida ley. 29 L.P.R.A. sec. 246e(a)(3).[35]

---

ayuda. Reiteradamente se ha resuelto que la decisión emitida en dicho caso es de carácter prospectivo, *García v. San Antonio Metro. Transit Auth.*, ante; *Brooks v. Village of Lincolnwood*, 620 F. Supp. 24, 26 (D.C. Ill. 1985); *Thurmond v. City of Union City, Tenn.*, 628 F. Supp. 146 (W.D. Tenn. 1986).

A estos mismos efectos cabe señalar que el Congreso, consciente del impacto trascendental que causaría la decisión de *García v. San Antonio Metro. Transit Auth.*, ante, sobre los estados, *enmendó el F.L.S.A. para posponer la aplicación de la Ley por aproximadamente un año*, hasta 15 de abril de 1986, Ley Pública 99–150, ante. *Kartevold v. Spokane County Fire Protection*, 625 F. Supp. 1553, 1563 (E.D. Wash. 1986); *Knight v. Morris*, 693 F. Supp. 439 (WD. Va. 1988). Sobre este particular el historial legislativo no deja lugar a dudas:

"State and local government employers are in no way obligated to comply with the Act's overtime provisions prior to April 15, 1986." H.R. Conf. Rep. No. 99–357, 99th Cong, 1st Sess., 2, 1985 U.S. Code Cong. & Admin. News, 651, 670.

[32] 29 L.P.R.A. sec. 271.

[33] 29 L.P.R.A. sec. 285.

[34] Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 245 *et seq.*).

[35] Como dato adicional, señalamos que el Art. 177 del Código Político dispone que: "Ningún funcionario o empleado que esté regularmente empleado en el servicio del Gobierno Estatal, o de cualquier municipio u organismo que dependa del Gobierno, cuyo salario, haber o estipendio sea fijado de acuerdo con la ley, recibirá paga adicional, o compensación extraordinaria de ninguna especie, del Gobierno Estatal, o de cualquier municipio, junta, comisión u organismo que dependa del Gobierno, en ninguna forma, por servicio personal u oficial de cualquier

■ Ello no obstante, es enteramente correcto que en *Municipio de Guaynabo v. Tribunal Superior*, ante, resolvimos que los *trabajadores de los gobiernos municipales* gozan de la protección constitucional de la jornada legal y del beneficio del pago de tiempo y medio que dispone el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado, ante, al igual que los trabajadores del Gobierno del Estado Libre Asociado. Ello, sin embargo, *no* quiere decir que todo aquel que trabaja en el gobierno estatal o municipal está incluido dentro del ámbito de esta disposición constitucional y por ende tiene derecho al pago de horas extras.

■ En *A.D. Miranda, Inc. v. Falcón*, 83 D.P.R. 735 (1961), hicimos un análisis de las vistas, memoriales, informes y debates de la Convención Constituyente que demostró que lo que tuvo en mente dicha Convención, al adoptar la Sec. 16 del Art. II de la Constitución del Estado Libre Asociado, ante, fue proteger no a todo el que trabaja sino a la gran "masa trabajadora que por razón de especial desvalimiento históricamente ha necesitado" aunque no siempre ha recibido "protección social". Véanse: Informe de la Comisión de Carta de Derechos, 4 Diario de Sesiones de la Convención Constituyente 2573 (1961); XXI (Núm. 1) Rev. Jur. U.P.R. 1, 25 (1951). Véanse, además: *Municipio de Guaynabo v. Tribunal Superior*, ante; *Espasas Dairy, Inc. v. J.S.M.*, 96 D.P.R. 816, 820 esc. 9 (1968).[36] Concluimos en el referido caso de *A.D. Miranda, Inc. v. Falcón*, ante, que el concepto

---

género, aunque sea prestado en adición a las funciones ordinarias de dicho funcionario o empleado, a menos que la referida paga adicional o compensación extraordinaria esté expresamente autorizada por la ley, y conste expresamente en la correspondiente asignación que ésta se destina a dicha paga adicional o compensación extraordinaria." 3 L.P.R.A. sec. 551(a).

[36] En el escolio Núm. 9 de *Espasas Dairy, Inc. v. J.S.M.*, 96 D.P.R. 816, 820 (1968), señalamos que debía tenerse presente lo expresado en *A.D. Miranda, Inc. v. Falcón*, 83 D.P.R. 735 (1961), a los efectos de que "todo trabajador" no quiere decir todo el que trabaja sino más bien la "masa trabajadora".

"todo trabajador" a que se refiere la Sec. 16 del Art. II de la Constitución del Estado Libre Asociado, ante, no incluía a los vendedores ambulantes y viajantes vendedores. Al así resolver, expresamos lo siguiente:

No podemos . . . interpretar literalmente la sección 16. La frase "todo trabajador" utilizada en esa sección no quierë decir todo el que trabaja. Entendida en esa forma literal se aplicaría a los ejecutivos de las empresas privadas, a los legisladores, a los jueces, a los jefes de los departamentos ejecutivos del gobierno, al Gobernador, etc. y por consiguiente eliminaría el sueldo fijo como manera de compensación en Puerto Rico. Ciertamente la Constitución no nos exige ese resultado. Aparte de lo irrazonable o absurdo que sería, el mismo no procede porque, como hemos visto, hay prueba de que esa cláusula se redactó para proteger a la "masa trabajadora". *A.D. Miranda, Inc. v. Falcón*, ante, pág. 745.

A la luz de lo antes expuesto, resolvemos que el demandante recurrido en el presente caso *no* tiene derecho al pago de horas extras en virtud de lo dispuesto en la Sec. 16 del Art. II de la Constitución del Estado Libre Asociado, ante. Este *no* pertenece a la gran "masa trabajadora" a quien va dirigida la protección que brinda la mencionada disposición constitucional. Es un funcionario que dirige y administra un departamento o división de la Rama Ejecutiva municipal.[37]

---

[37] El Art. 16 de la Ley de la Defensa Civil de Puerto Rico, ante, dispone que la Agencia Municipal de Defensa Civil será *dirigida* por un director municipal de Defensa Civil responsable directamente al Alcalde y que el Director municipal *organizará* y *administrará* la agencia municipal de acuerdo con las directrices del Director Estatal. Según la Ordenanza Núm. 13 del Municipio de Trujillo Alto el Director municipal es el "jefe ejecutivo" de la Agencia Municipal de Defensa Civil. Los poderes que le confiere la mencionada ordenanza sostienen que no es un simple empleado sino un funcionario. Entre ellos se encuentran los siguientes: poder para contratar el personal profesional, técnico o de cualquier índole que estime conveniente con la autorización del Alcalde, y poder de adquirir por compra o donación todos los materiales o equipos que sean necesarios.

# VI

Procede, por último, que nos cuestionemos cuál debe ser la consecuencia de la determinación del tribunal de instancia —la cual confirmamos por ser la misma jurídicamente correcta— a los efectos de que la destitución del recurrido Rodríguez Cruz del puesto de Director de la Defensa Civil del Municipio de Trujillo Alto, por parte del Alcalde Pedro A. Padilla, se debió a razones de índole político-partidista. Hay dos (2) posibles alternativas: ordenar la reinstalación del recurrido al cargo del cual fue destituido ilegalmente con derecho a recibir los haberes dejados de percibir o meramente condenar a la parte demandada a esto último, esto es, al pago de la diferencia entre el salario que él percibía como Director de la Defensa Civil y el salario que ha venido recibiendo en el cargo que ha venido ocupando en el Municipio de Trujillo Alto.

En *Ramos v. Secretario de Comercio*, ante, al confirmar la determinación del foro de instancia a los efectos de que la destitución allí en controversia se había debido a motivos políticos, *este Tribunal igualmente confirmó la determinación de dicho foro ordenando la reinstalación del empleado al cargo del cual había sido destituido.*[38]

Ratificamos dicha posición en el día de hoy. Ello resulta ser no sólo lo lógico y razonable sino que lo jurídicamente procedente. En primer lugar, una vez el empleado público despedido establece, durante el proceso judicial correspondiente, un caso prima facie de despido por razón de discrimen político, si la autoridad nominadora no refuta la prueba sobre discrimen, ni presenta prueba que demuestre alguna otra razón válida para el despido, ni demuestra que la afiliación política es un requisito apropiado para el desem-

---

[38] A esos efectos véase, en específico, los *autos originales* de dicho caso.

peño del cargo, *no* hay razón alguna para que dicho empleado, eficiente y competente,[39] no deba ser reinstalado al cargo del cual fue despedido y continúe desempeñando el mismo. Por otro lado, y a diferencia del caso de la acción por razón de despido injustificado que le concede al empleado de empresa privada la Ley Núm. 80 de 30 de mayo de 1976[40] —al amparo de la cual el remedio que, de ordinario, se concede lo es el pago de la "mesada"— aquí se trata de una conducta que viola un mandato expreso de nuestra Constitución, con el agravante de que es el Estado el violador, el cual se supone sea el primero en defender los derechos constitucionales de nuestra ciudadanía. Esto es, de no ordenarse la reposición del empleado público al cargo que ocupaba, a todos los efectos prácticos se estaría "premiando" la *acción inconstitucional* de la autoridad nominadora al discriminar contra el empleado destituido por razones políticas y "castigando" el empleado, capaz y competente, que ha sido víctima del impermisible discrimen político. La violación de un derecho constitucional por parte del Estado amerita y exige un remedio efectivo que vindique, elimine y señale el camino a seguirse en el futuro en relación con conducta contraria a lo establecido por nuestra ley fundamental. *Cf. Noriega v. Gobernador*, 122 D.P.R. 650 (1988).

Resolvemos, en consecuencia, que procede ordenarse la reinstalación del empleado de confianza al cargo del cual fue removido cuando dicha destitución ha tenido como base razones de índole político-partidista debiendo, además, compensarse a éste por los haberes que efectivamente dejó de

---

[39] Como expresáramos al comienzo de la ponencia, las partes *estipularon* que el recurrido Rodríguez Cruz es una persona capacitada y competente para desempeñar el cargo de Director de la Defensa Civil del Municipio de Trujillo Alto.

[40] 29 L.P.R.A. sec. 185a–185*l*.

percibir como resultado de la acción ilegal de que fue objeto.[41]

## VII

Por los fundamentos antes expuestos, *se dictará Sentencia: ordenándose la reposición del demandante Rodríguez Cruz al puesto de Director de la Defensa Civil del Municipio de Trujillo Alto; condenando a los demandados a pagar al demandante la diferencia en salarios entre el cargo del cual fue removido y el salario que ha estado percibiendo en el puesto que actualmente ocupa en dicho Municipio; eliminándose la partida de $30,000.00 concedida al demandante por concepto de las angustias y sufrimientos mentales; eliminándose la partida de dinero en efectivo concedida por concepto de vacaciones acumuladas y no pagadas, ya que según antes expuesto el demandante recurrido únicamente tiene derecho a disfrutar una licencia de vacaciones de ciento ochenta (180) días, y eliminándose la partida concedida al demandante recurrido por concepto de horas extras trabajadas y no compensadas.*

■ *Aun cuando ello no fue levantado como error por la parte demandada recurrente, debe eliminarse la partida de $5,000.00 concedida al demandante recurrido por concepto de honorarios de abogado por ser la misma improcedente como cuestión de derecho en vista de las disposiciones de la Regla 44 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) y lo resuelto por este Tribunal en Colondres Vélez v. Bayrón Vélez, 114 D.P.R. 833 (1983).*[42]

---

[41] En cuanto al aspecto de los haberes a que tiene derecho un empleado público despedido ilegalmente de su cargo, véanse: *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467 (1982); *Estrella v. Mun. de Luquillo*, 113 D.P.R. 617 (1982).

[42] En *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833 (1983), resolvimos que bajo la Regla 44.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, al eximirse

■ *Procede, por último, que se condene a los deman-dados recurrentes al pago de interés al tipo legal sobre la cuantía de la sentencia —relativa al pago de los haberes dejados de percibir— a partir de la fecha en que se dictó la misma.*(43)

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Alonso Alonso concurren con el resultado sin opinión escrita.

---

al Estado, los municipios y demás entidades y personas allí mencionadas de la imposición de intereses por temeridad en pleitos sobre cobro de dinero y daños y perjuicios, también se les eximió de la imposición de honorarios de abogado por temeridad en ese tipo de litigios.

(43) Bajo la Regla 44.3(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, "es mandatorio el que un tribunal, al dictar una sentencia en que ordene el pago de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia sin excepción de clase alguna". *Municipio de Mayagüez v. Rivera*, ante, pág. 470.