MANUEL CARDONA ZAYAS y GUILLERMO MARTÍNEZ GONZÁLEZ, querellantes y recurridos, *v.* DEPARTAMENTO DE RECREACIÓN Y DEPORTES ET ALS., querellados y peticionarios; MARIANA ORTIZ SANTANA, querellante y recurrida, *v.* DEPARTAMENTO DE INSTRUCCIÓN PÚBLICA ET AL., querellados y peticionarios; NOELIA CRUZ ORTIZ, demandante y recurrida, *v.* DEPARTAMENTO DE INSTRUCCIÓN PÚBLICA, ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrentes.

*Números:* CE-89-44     *Resueltos:* 13 de diciembre de 1991
CE-89-45
· RE-89-611

558

*Rafael Ortiz Carrión, Procurador General, Nilda P. Fuentes Ortiz* y *Sylvia Cancio Bigas, Procuradoras Generales Auxiliares*, abogados del Departamento de Recreación y Deportes, peticionario; *Frank Rodríguez García*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Estos casos nos permiten determinar si la Ley Núm. 382 de 11 de mayo de 1950 (29 L.P.R.A. secs. 136–139) confiere una causa de acción en daños por discrimen político a los empleados de las agencias gubernamentales del Estado Libre Asociado de Puerto Rico (en adelante E.L.A.). En los tres (3) casos, el tribunal de instancia concluyó que las agencias del E.L.A. constituían un "patrono" y, por ende, sus empleados tenían derecho a solicitar el remedio específico dispuesto por esta legislación. Al interpretar el estatuto a la luz de las disposiciones análogas de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–

151) y al emplear la norma de hermenéutica legal aplicable a leyes *in pari materia*, revocamos las decisiones recurridas.

I

El 13 de julio de 1987 los Sres. Manuel Cardona Zayas y Guillermo Martínez González presentaron ante el Tribunal Superior, Sala de Aibonito, unas querellas contra el Departamento de Recreación y Deportes y el E.L.A. al amparo de la Ley Núm. 382, *supra*, reclamando daños por haber sido cesanteados de sus nombramientos a término fijo por razones políticas. Para tramitar sus querellas invocaron la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3120), según lo provisto en el Art. 3 de la Ley Núm. 382, *supra*, 29 L.P.R.A. sec. 138.

Los querellantes alegaron que eran miembros del Partido Nuevo Progresista y que, efectivo el 30 de junio de 1986, fueron cesanteados del Departamento de Recreación y Deportes. La única razón ofrecida para justificar la decisión fue que sus nombramientos eran por término fijo. También señalaron que habían sido sustituidos en sus puestos por miembros reconocidos del Partido Popular Democrático. Cada uno reclamó la cantidad de treinta y un mil quinientos cuarenta dólares ($31,540) por las angustias, los sufrimientos y los sueldos dejados de devengar. Simultáneamente, solicitaron la reposición en el empleo y la doble compensación provista en la Ley Núm. 382, *supra*.

La parte querellada contestó la demanda el 20 de octubre de 1987, negó las alegaciones de discrimen político y solicitó la desestimación de la querella porque el recurso legal de la Ley Núm. 2, *supra*, no era el correcto y no se habían agotado los remedios administrativos. Luego de algunos trámites procesales, el E.L.A. presentó una moción en la que solicitó la desestimación y/o sentencia sumaria.

El tribunal *a quo* la denegó por entender que la parte promovente había perdido interés en ella.

Oportunamente, el E.L.A. solicitó la reconsideración de esta resolución. Como el tribunal de instancia se negó a reconsiderar su dictamen, el E.L.A. recurrió ante nos y sostiene que las agencias gubernamentales no pueden ser consideradas como un patrono bajo las disposiciones de la Ley Núm. 382, *supra*, y estar sujetas a la imposición de doble compensación por los daños sufridos por el empleado.

El mismo día en que se presentó la petición de *certiorari* en el caso *Cardona Zayas v. Departamento de Recreación y Deportes*, el E.L.A. recurrió ante nos en el caso *Ortiz Santana v. Departamento de Instrucción Pública* cuestionando la conclusión del Tribunal Superior, Sala de Ponce, de que "en cuanto a la Ley Núm. 382 el E.L.A. debe ser considerado como un patrono". Caso Núm. CE–89–45, *Exhibit* III, pág. 7.

La controversia en ese recurso también se originó en una querella al amparo de la Ley Núm. 382, *supra*, contra el Departamento de Instrucción Pública, la Secretaria de la Agencia y el Director Regional, por un alegado discrimen político en el empleo. La querellante adujo que fue cesanteada de su puesto de Bibliotecaria en la Biblioteca Pública de Adjuntas por no pertenecer al Partido Popular Democrático. Sostuvo que por esta razón, la actuación de los querellados violó su derecho de asociación garantizado por las Constituciones del Estado Libre Asociado de Puerto Rico y de Estados Unidos de América. Reclamó los haberes dejados de percibir con motivo de su despido, la suma de veinticinco mil dólares ($25,000) por los daños sufridos más la doble compensación que dispone la Ley Núm. 382, *supra*. También solicitó la reposición en su antiguo empleo.

El Estado contestó la querella y, simultáneamente, presentó una moción de desestimación basada en la inaplicabilidad de la ley a la controversia de autos. También sostuvo que la querellante no agotó los remedios provistos por

la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*

El tribunal de instancia declaró sin lugar la moción por entender que "el E.L.A. debe ser considerado como un patrono y sus empleados tienen el derecho a reclamar el remedio específico que concede dicha ley". Caso Núm. CE-89-45, *Exhibit* III, pág. 7. El Estado recurrió ante esta Curia señalando que el E.L.A. y sus agencias están excluidos del alcance de la Ley Núm. 382, *supra.*

Como ambos recursos requieren que por primera vez interpretemos si la Ley Núm. 382, *supra*, establece una causa de acción por discrimen político contra las agencias del E.L.A., expedimos los mandamientos de *certiorari* correspondientes y los consolidamos.

Varios meses después, el E.L.A. solicitó que revisáramos la sentencia dictada por el Tribunal Superior en el caso *Cruz Ortiz v. Departamento de Instrucción Pública*, que declaró con lugar una querella incoada bajo la Ley Núm. 382, *supra.*

En su querella la señora Cruz Ortiz alegó que era maestra de estudios sociales de la Región Educativa de Ponce y que solicitó al Departamento de Instrucción Pública que la considerara para ocupar la vacante del puesto de Coordinadora de Evaluación que surgió en el Distrito Escolar de Juana Díaz. Adujo que, a pesar de que tenía todos los requisitos y las recomendaciones necesarios para la posición, el Departamento dejó sin efecto el proceso de entrevistas y, posteriormente, nombró a otra persona para ocupar dicha posición.

Sostuvo que esa otra candidata fue nombrada por su afiliación política con el Partido Popular Democrático y no por sus cualificaciones. En su querella alegó que la razón por la cual no fue nombrada se debía a que ella era adepta del Partido Nuevo Progresista. Adujo que esta actuación constituye discrimen político y viola su derecho a la libre

asociación garantizado por la Constitución del E.L.A. y por la de Estados Unidos.

A tenor con lo anterior, la querellante solicitó al foro de instancia que ordenara al Departamento de Instrucción Pública que la nombrara en la posición de Coordinadora de Evaluación del Distrito Escolar de Juana Díaz y le pagara la suma de quince mil dólares ($15,000) por los daños infligidos más la doble compensación provista por la Ley Núm. 382, *supra.*

Luego de una serie de trámites procesales, el foro de instancia concluyó que el Estado había contestado fuera de los términos provistos en el procedimiento establecido por la Ley Núm. 2, *supra*, y ordenó a los querellados que nombraran a la querellante Coordinadora de Evaluación del Distrito Escolar de Juana Díaz. También condenó al Estado a satisfacer a la recurrida la suma de mil dólares ($1,000), más el pago de la doble compensación que provee la Ley Núm. 382, *supra*, y las costas del litigio.

Oportunamente, el Estado solicitó reconsideración y adujo que la Ley Núm. 382, *supra*, y la Ley Núm. 2, *supra*, eran inaplicables porque el Departamento de Instrucción no era un "patrono" para efectos de estas leyes. Mediante una extensa resolución, el foro de instancia denegó la reconsideración por entender "que en cuanto a la Ley Núm. 382, supra, el Estado debe ser considerado como un patrono y sus empleados tienen derecho de reclamar el remedio específico que concede dicha ley, ya que la misma no excluye al Estado expresa ni tácitamente". Caso Núm. RE-89-611, *Exhibit* V, pág. 23. El E.L.A., entonces, presentó una solicitud de revisión y en vista de que el recurso presentaba una controversia de derecho que estaba ante nuestra consideración, expedimos el recurso.

Luego de explicar los hechos pertinentes a la controversia medular en los tres (3) recursos consolidados, procede examinar el derecho aplicable.

## II

La Ley Núm. 382, *supra*, estableció una acción civil en daños y perjuicios por motivo de discrimen político en el empleo por parte de un patrono y le confirió a los tribunales la facultad de ordenar la reposición en el empleo y el cese y desistimiento del acto proscrito. El Art. 1 de la Ley Núm. 382, *supra*, también dispone que el patrono que incurra en esta práctica responderá civilmente por una "suma igual al doble del importe de los daños que el acto haya causado al empleado o ex empleado" (29 L.P.R.A. sec. 136) y, en el caso de que no se puedan determinar los daños pecuniarios, éstos se fijarán en una suma no menor de cincuenta (50) ni mayor de mil dólares ($1,000). Íd.[1]

Dos (2) años después de la promulgación del estatuto, se aprobó la Constitución del E.L.A. que contiene una prohibición expresa en su Carta de Derechos contra el discrimen "por motivo de raza, color, sexo, nacimiento, origen o condición social, [e] ideas políticas o religiosas". Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 257. Con el propósito de extender el alcance de estos postulados a los talleres de trabajo en todo el país, el 30 de junio de 1959 se aprobó la Ley Núm. 100, *supra*. Dicho estatuto, según ha sido posteriormente enmendado, pro-

---

[1] *"Sec. 136. Interferencia con afiliación política—Responsabilidad civil*

"Todo patrono que despida, suspenda, rehúse restituir en su trabajo, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga o intente imponer condiciones de trabajo más onerosas a un empleado o ex empleado suyo, o discrimine en cualquier forma o amenace cometer contra él cualquiera de tales actos porque esté afiliado a determinado partido político incurrirá en responsabilidad civil por suma igual al doble del importe de los daños que el acto haya causado al empleado o ex empleado; o por una suma no menor de cincuenta (50) ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios o el doble de éstos fuere inferior a la suma de cincuenta (50) dólares; o por una suma igual al doble del importe de los daños que el acto haya causado al empleado o ex empleado y una suma adicional que no excederá de mil (1,000) dólares, a discreción del tribunal.

"El tribunal podrá ordenar además al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate."

híbe el discrimen en el empleo y provee un mecanismo administrativo y un procedimiento legal para darle vigencia a la Sec. 1 del Art. II de la Constitución del E.L.A., *supra*, dentro del contexto obrero-patronal. "Su propósito fue dotar a la clase obrera con los instrumentos necesarios para protegerlos del discrimen por razón de edad, raza, color, sexo, origen social o nacional, condición social e ideas políticas o religiosas." (Escolio omitido.) *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 198 (1988).

La Ley Núm. 100, *supra*, según enmendada, es una legislación abarcadora en materia de discrímenes en el empleo. Al igual que la Ley Núm. 382, *supra*, la Ley Núm. 100, *supra*, según enmendada, prohíbe el discrimen en el empleo por ideas políticas o por afiliación a un partido político y cubre todas las actuaciones anteriormente reglamentadas. Como protección adicional, el Art. 1 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 146, proscribe también los discrímenes en el empleo por razón de edad, raza, color, sexo, origen social o racional, condición social e ideas religiosas. Un examen de su historial legislativo revela que la intención de sus autores fue establecer un extenso ordenamiento que protegiera efectivamente a los trabajadores contra discrímenes mediante la creación de una causa de acción civil y otra de carácter penal contra todo patrono que incurra en conducta discriminatoria. Véase *García Pagán v. Shiley Caribbean, Etc.*, supra; *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985). Su alcance se extiende, no sólo a los patronos, sino también a las uniones obreras y protege tanto a los obreros como a los solicitantes de empleo.

Con el propósito de ampliar la protección de las mujeres trabajadoras, la Asamblea Legislativa posteriormente enmendó la Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. secs. 467–474), encaminada a proteger a las trabajadoras embarazadas. También aprobó la Ley Núm. 69

de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 *et seq.*) que prohíbe el discrimen por sexo, y la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155 *et seq.*) que prohíbe el hostigamiento sexual en el empleo. En todas se establece un mecanismo de indemnización a las personas agraviadas. Como toda esta legislación tiene el mismo propósito —la prohibición del discrimen en el empleo— sus disposiciones deben leerse en forma armoniosa y así evitamos pronunciamientos contradictorios o distinciones que den lugar a resultados irrazonables o que carezcan de base racional. *García Pagán v. Shiley Caribbean, etc.*, supra.

En el caso particular de la Ley Núm. 382, *supra*, y de la Ley Núm. 100, *supra*, como ambas prohíben el discrimen en el empleo por ideas políticas, los estatutos están *in pari materia* y, por lo tanto, sus disposiciones deben ser interpretadas conjuntamente y no de forma aislada. Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18; R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 73, pág. 481.

Al amparo de la norma de hermenéutica consagrada en el Art. 18 del Código Civil de Puerto Rico, *supra*, que requiere una interpretación armónica de las leyes *in pari materia*, se presume que cuando la Asamblea Legislativa aprueba un estatuto, ha tomado en consideración la legislación adoptada anteriormente sobre el mismo asunto. 2A *Sutherland, Statutes and Statutory Construction* Sec. 51.02, pág. 453 (4ta ed. 1984). Como las derogaciones tácitas no son favorecidas si el nuevo estatuto no enmienda o deroga expresamente el anterior, se presume que las nuevas disposiciones están en armonía con la legislación previamente aprobada sobre el mismo asunto. También se presume que ambas leyes reflejan la política pública propulsada por la Asamblea Legislativa y que sus

disposiciones deben ser interpretadas refiriéndose las unas a las otras como un todo.

Aunque exista un conflicto aparente entre estatutos sobre la misma materia, de ser posible, deben ser interpretados armoniosamente. *Sutherland*, supra, pág. 453. Igualmente, cuando existe un conflicto irreconciliable entre una nueva disposición y estatutos previos referentes a la misma materia, la nueva disposición será la que controle ya que constituye la última expresión de la Legislatura. Íd. págs. 453–454. Por lo tanto, esa última disposición es la que debe prevalecer. *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 874 (1983).

### III

Al aplicar estas normas de hermenéutica legal en estos casos, obsérvese que tanto la Ley Núm. 382, *supra*, como la Ley Núm. 100, *supra*, definen lo que constituye un patrono a los fines de ese ordenamiento. En ambos casos el término patrono "incluye a toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representantes de dicha persona natural o jurídica". Art. 4 de la Ley Núm. 382, *supra*, 29 L.P.R.A. sec. 139. Sin embargo, la Ley Núm. 100, *supra*, expresamente incluye en la definición "aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas". 29 L.P.R.A. sec. 151(2).

A los fines de lograr una interpretación armoniosa de ambos estatutos y de evitar un conflicto en cuanto a quién constituye un patrono bajo estas dos (2) leyes, la definición de patrono incluida en la Ley Núm. 100, *supra*, debe prevalecer sobre la anterior. De esta manera reconocemos que cuando la Legislatura quiso extender la protec-

ción de esta legislación al empleo público, solamente incluyó a los empleados de las agencias o instrumentalidades que operaren como negocios o empresas privadas.

Recientemente, en *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486, 508 (1990), interpretamos el alcance del término "patrono" y concluimos que "[e]l historial legislativo de la Ley Núm. 100, ante, revela que su objetivo principal es proteger a los empleados de la *empresa privada* contra todo tipo de discrimen aun cuando, *por excepción*, se extiende la protección a los empleados de las agencias o instrumentalidades del Gobierno que operan como negocios o empresas privadas". (Énfasis en el original.) También afirmamos que de los debates que precedieron la aprobación de la ley surge que la frase "agencias o instrumentalidades del Gobierno que operan como negocios o empresas privadas" (íd.) se refiere únicamente a las corporaciones públicas del Estado Libre Asociado y no a los municipios:

> No hay indicio alguno en el historial legislativo de esta ley de que la intención de los legisladores al aprobarla fuera hacerla aplicable a los municipios; más bien parece ser todo lo contrario ya que una enmienda propuesta a la definición de "patrono" del citado Art. 6 de la Ley Núm. 100, ante, a los fines de extender la protección de la ley a todos los empleados del Gobierno, fue derrotada. *Rodríguez Cruz v. Padilla Ayala*, supra, pág. 509.

De este análisis se desprende que la Asamblea Legislativa expresamente excluyó de la mencionada ley a todos los empleados públicos de las agencias o instrumentalidades públicas que *no* operaren como negocios o empresas privadas. Estos empleados, con excepción de lo dispuesto en la Sec. 10.6 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1338, están cubiertos por el sistema de personal. Por otro lado, según lo reconoce el Procurador General en sus alegatos, estos empleados también gozan de la protección constitucional contra despidos

por motivaciones políticas, *Ramos v. Srio de Comercio*, 112 D.P.R. 514 (1982); *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989), y pueden vindicar sus derechos constitucionales a través de un *injunction* incoado al amparo del Art. 678 del Código de Enjuiciamiento Civil, Ley Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524).

Si partimos de la premisa de que el legislador, al formular un nuevo ordenamiento para proteger a los obreros de despidos discriminatorios, tomó en consideración la legislación anterior —*Sutherland*, supra— en correcta hermenéutica tenemos que presumir que en la Ley Núm. 100, *supra*, se incluyó la segunda parte precisamente para proteger a un sector que anteriormente no estaba cubierto ni estaba protegido por la Ley de Personal del Servicio Público de Puerto Rico. Sin embargo, ninguna de estas leyes incluye a las otras agencias del Gobierno dentro del término "patrono". El historial legislativo de la Ley Núm. 100, *supra*, y de otras leyes análogas así lo confirma. Véase *Rodríguez Cruz v. Padilla Ayala*, supra.

En vista de esta conclusión, tampoco podía el empleado utilizar el procedimiento especial de la Ley Núm. 100, *supra*, según enmendada. De hecho, la Sec. 2 de la Ley Núm. 2, *supra*, expresamente dispone que "la palabra 'empleado', que se usa en su acepción más amplia, comprenderá, entre otros, a toda clase de artesano, empleado o dependiente de comercio o industria". (Énfasis suplido.) 32 L.P.R.A. sec. 3119. Por sus propios términos excluye a los empleados del Gobierno del E.L.A. e incluye solamente a los que trabajan en el comercio o en la industria.

## IV

En los casos de autos, las querellantes Cruz Ortiz y Ortiz Santana eran empleadas del Departamento de Instrucción Pública. Por su parte, Cardona Zayas y Martínez

González trabajaban en el Departamento de Recreación y Deportes. Estas agencias constituyen departamentos ejecutivos de gobierno de la Rama Ejecutiva del Estado Libre Asociado de Puerto Rico (véanse: 3 L.P.R.A. sec. 141 *et seq.*, y 3 L.P.R.A. sec. 442 *et seq.*) y están excluidos del alcance de la Ley Núm. 382, *supra.*

En estas circunstancias, procede que revoquemos las decisiones recurridas y ordenemos la desestimación de la causa de acción fundada en la Ley Núm. 382, *supra.* Debido a que en todos estos casos los empleados recurridos presentaron sus querellas luego de haber expirado el plazo apelativo provisto por la Ley de Personal del Servicio Público de Puerto Rico, no podemos remitir el asunto a la Junta de Apelación del Sistema de Administración de Personal para que se consideren como unas apelaciones de las decisiones de las agencias. Por otro lado, al proveer la Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que "[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones", procede la devolución de los casos al foro de instancia para que se determine, mediante el trámite ordinario, la procedencia o no de las otras reclamaciones de los querellantes bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983, y la Constitución del E.L.A.

Por los fundamentos expuestos anteriormente, *se expiden los autos y se revocan las sentencias y resoluciones recurridas en cada caso.*

El Juez Asociado Señor Rebollo López emitió un voto particular y de conformidad. El Juez Asociado Señor Negrón García emitió una opinión disidente.

– O –

Opinión disidente del Juez Asociado Señor Negrón García.

El "meollo de la función judicial y las graves responsabilidades que ésta entraña no radican en la sencilla operación de sacar una conclusión de dos premisas, para completar un supuesto silogismo. Sentadas la premisa mayor y la premisa menor, la operación de extraer la consecuencia puede realizarla correctamente un niño de diez (10) años, o incluso la sirvienta analfabeta. En todo caso, tiene uno que darse cuenta de que la auténtica miga de la función judicial y la pesada carga de la misma no consistirían jamás en deducir la conclusión de dos premisas, sino en la tarea, *muchas veces dificilísima, de sentar las dos premisas correctas*". L. Recaséns Siches, *Introducción al Estudio del Derecho*, 3ra ed., México, Ed. Porrúa, 1974, pág. 199.

La aplicación de los principios de hermenéutica legal esbozados en la opinión mayoritaria nos lleva a un resultado distinto. Partimos de la premisa de que, si bien los estatutos *in pari materia* deben ser "interpretados conjuntamente", ello no significa que sus disposiciones tendrán el mismo alcance. Ese enfoque responde a no alterar la política pública que consagran mediante una interpretación aislada. De la misma forma, la interpretación conjunta de los estatutos *in pari materia* define su extensión y cobertura. Después de todo, si se presume que el legislador conoce leyes anteriores, en ausencia de una expresa o implícita intención derogatoria, la legislación posterior ha de considerarse *complementaria*. En esa circunstancia, concluir que dos o más estatutos tienen la misma extensión es un absurdo hermenéutico y un ejercicio impermisible del Poder Judicial que deroga la expresión legítima y válida de la Asamblea Legislativa. Elaboremos.

# I

En 1950 se aprobó la Ley Núm. 382 de 11 de mayo, 29 L.P.R.A. sec. 136 *et seq.*, para imponer responsabilidad civil por discrimen en el empleo por razón de ideas políticas. Su Art. 1 (29 L.P.R.A. sec. 136) dispuso que la responsabilidad sería por una suma igual al doble del importe de los daños. De no poder determinarse la cuantía de los daños pecuniarios o si su cuantía resulta menor de cincuenta dólares ($50), el tribunal quedaba facultado para imponer una compensación hasta mil dólares ($1,000). A su discreción, podía ordenar la reposición del empleado, y al patrono cesar y desistir de la práctica discriminatoria. También *estableció una presunción controvertible de intención discriminatoria* si el despido ocurre tres (3) meses antes o seis (6) meses después de cualquier *elección política*.

Aunque no contamos con el beneficio de su historial legislativo, de su texto se desprende que se aplica a "toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, *funcionario*, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representantes de dicha persona natural o jurídica". (Énfasis suplido.) Art. 4 de la Ley Núm. 382, *supra*, 29 L.P.R.A. sec. 139. De esta definición surge la amplia cobertura del texto y, sobre todo, que no excluye al Gobierno.

Subsiguientemente, en el 1959 se aprobó la Ley Núm. 100 de 30 de junio, 29 L.P.R.A. sec. 146 *et seq.*, que impuso responsabilidad civil y penal a todo patrono que discriminara por razón de edad, raza, color, religión o condición social. En su versión original no cubría discrimen por razón de ideas políticas ni sexo. Ambas modalidades fueron incluidas por la Ley Núm. 58 de 22 de junio de 1975 y la Ley Núm. 50 de 30 de mayo de 1972, respectivamente.

De su texto observamos que el esquema de responsabilidad civil de la Ley Núm. 100, *supra*, es prácticamente

idéntico al de la Ley Núm. 382, *supra;*[1] a diferencia de esta última, se considera patrono "toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas." Art. 6 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 151(2).

Como señala la opinión mayoritaria, esta definición excluye al Gobierno y sólo pretende cobijar a las empresas privadas y corporaciones públicas que operen como negocios privados. El historial legislativo de la Ley Núm. 100, *supra*, así lo confirma. 12 Diario de Sesiones de la Asamblea Legislativa (Senado), T. 2, págs. 681-688 (1959), sustitutivo del P. del S. 331. Véase, también, *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486 (1990). Sin embargo, en el historial de la Ley Núm. 58, *supra* —cuyo propósito original era extender la protección a programas de adiestramiento o aprendizaje— no se discutieron las razones para incluir, entre los discrímenes prohibidos el de ideas políticas.

## II

Las Leyes Núms. 382 y 100, *supra*, pertenecen a un cuerpo de estatutos dirigidos a garantizar protecciones en el trabajo. Complementan esta gama de garantías la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. secs. 467–474 (ley para la protección de madres obreras); la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321), que prohíbe el discrimen por razón de sexo; la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155),

---

[1] Sólo difiere en la cuantía mínima que en la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 *et seq.*) es de cien dólares ($100).

que prohíbe el hostigamiento sexual en el empleo, y la Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. sec. 61), Ley de Relaciones del Trabajo de Puerto Rico.

La definición de "patrono" en la Ley Núm. 382, *supra*, es posterior a la Ley de Relaciones del Trabajo de Puerto Rico de 8 de mayo de 1945 (29 L.P.R.A. sec. 61), que excluyó expresamente de su ámbito al Gobierno, excepto sus instrumentalidades corporativas. Art. 2 (29 L.P.R.A. sec. 63(2)). De esta definición surge, claramente, la preocupación e interés que tuvo el legislador de que la aplicabilidad de la ley se extendiera sólo a aquellas entidades gubernamentales que operan como negocios privados. *NO LO HIZO ASÍ EN LA LEY NÚM. 382, supra.*

Cinco (5) años más tarde, la Asamblea Legislativa aprobó una ley diseñada para proteger a los obreros contra discrímenes fundados en ideas políticas. Contrario a la Ley Núm. 130, *supra*, no se excluyó al Gobierno: ¿podemos seriamente considerar dicha omisión como un simple "olvido"? NO LO CREEMOS; DESPUÉS DE TODO, ¿QUIÉNES ESTÁN MÁS EXPUESTOS A LAS PERSECUCIONES O REVANCHISMOS POR RAZÓN DE CAMBIOS POLÍTICOS, LOS EMPLEADOS PÚBLICOS O LOS DE EMPRESAS PRIVADAS? LA HISTORIA CONTEMPORÁNEA NOS BRINDA CLARAMENTE LA RESPUESTA.

El hecho de que se excluyeran a los empleados públicos en la Ley Núm. 130 de 1945, *supra* —no así en la Ley Núm. 382 de 1950, *supra*— y se volvieran a excluir en la Ley Núm. 100 de 1959, *supra*, corrobora la intención de la Asamblea Legislativa de incluir al Gobierno en la definición de "patrono". Después de todo, estamos frente a una definición suficientemente amplia. Y es que omitir una disposición de un estatuto similar que aborda un mismo tema, tiende a confirmar que existía una intención distinta. Véase 2A *Sutherland, Statutes and Statutory Construction*

Sec. 51.02, pág. 454 (4ta ed. 1984), citado con aprobación en la opinión mayoritaria.

## III

La interpretación mayoritaria acarrea un indeseable resultado. Ilógicamente permite que subsistan dos (2) estatutos que versan y atienden un mismo asunto, esto es, que protegen contra el discrimen político *únicamente* a los empleados de las empresas privadas y sus equivalentes públicas. No cabe otra conclusión. Si se excluye al Gobierno de la definición de patrono, la Ley Núm. 382, *supra*, sólo cobijará entonces a los empleados de las empresas privadas, *quienes ya tienen la protección de la Ley Núm. 100, supra*. Éstos, a su conveniencia, podrán escoger el estatuto que mejor satisfaga sus intereses. *Dudamos seriamente que ésta haya sido la intención legislativa.*

En resumen, según señaláramos, la Ley Núm. 382, *supra*, y la Ley Núm. 100, *supra*, tienen básicamente el mismo diseño remedial. Sólo varían en cuanto a la presunción que establece la Ley Núm. 382, *supra*, y en su definición de patrono que incluye al Gobierno. Ya, mediante *Sentencia* publicada en *Plaza v. Municipio de Adjuntas*, 104 D.P.R. 905 (1976), partimos de la premisa de que la Ley Núm. 382, *supra*, aplica al Gobierno.

La mayoría sugiere que las salvaguardas de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*, cubren las acciones de los empleados aquí recurridos. De esta forma intiman que tal protección excluye la que brinda la Ley Núm. 382, *supra*. Opinión mayoritaria, pág. 570. Nada más lejos de la verdad. Sostener esa apreciación debilita, por no decir que revoca *sub silentio*, nuestra doctrina expuesta en *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *First Fed. Sav. v. Asoc. de Condómines*, 114 D.P.R. 426 (1983); *Pedraza Rivera v. Collazo Collazo*, 112 D.P.R. 272 (1979), expositiva

de que los trámites administrativos pueden obviarse cuando la causa de acción es una violación a los derechos civiles y constitucionales.

LA OPINIÓN MAYORITARIA OLVIDA QUE *ESTA-MOS ANTE UN ESTATUTO DE CARÁCTER ESPECIAL, LIMITADO A DISCRIMEN POR IDEAS POLÍTICAS EN EL EMPLEO Y CON EL BENEFICIO DE UNA PRESUNCIÓN*. Aunque los empleados recurridos pueden vindicar sus derechos constitucionales por medio de un *injunction*, según el Art. 678 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524, la verdad es que, huérfanos de esa presunción de discrimen y de la doble penalidad por daños pecuniarios, quedan en un estado de indefensión sustancial.

LA INTERPRETACIÓN DE HOY SÓLO PUEDE EN-TENDERSE COMO UN ESFUERZO DE RELEVAR AL GOBIERNO DE LA CARGA QUE REPRESENTA ESA IMPORTANTE PRESUNCIÓN DE DISCRIMEN POLÍ-TICO DURANTE LOS PERÍODOS PRE Y POST ELECCIONARIOS.

Confirmaríamos los dictámenes recurridos.

— O —

Voto particular y de conformidad emitido por el Juez Asociado Señor Rebollo López.

No obstante la lógica y contundencia del argumento esbozado en la Opinión disidente del compañero Juez Asociado Señor Negrón García —a los efectos de que los empleados públicos, de ordinario, son los más expuestos al discrimen por razón de revanchismo político— suscribimos, y endosamos con nuestro voto, la Opinión mayoritaria del Tribunal, suscrita la misma por el compañero Juez Asociado Señor Hernández Denton, la cual sostiene, en síntesis, que la Ley Núm. 382 de 11 de mayo de 1950 (29

L.P.R.A. sec. 136 *et seq.*) no cobija a los empleados de las agencias gubernamentales del Estado Libre Asociado de Puerto Rico.

La razón para ello es sencilla. Al enfrentarnos a situaciones como las que plantean los casos hoy ante nuestra consideración —esto es, situaciones en las cuales tenemos que interpretar cláusulas, aparentemente contradictorias o inconsistentes, de leyes que versan sobre la misma materia— nos vemos *en la obligación* de partir de la premisa que la Asamblea Legislativa de Puerto Rico al aprobar una ley en particular tuvo presente, y consideró, otras leyes vigentes que tienen relación con la misma.

En otras palabras, si es que deseamos que las distintas leyes de nuestro ordenamiento jurídico, que tratan sobre una misma materia guarden alguna lógica y coherencia entre sí, nos vemos *obligados* a interpretar de una manera razonable y armoniosa la, en ocasiones, inconsistente y contradictoria actuación legislativa. En la situación hoy ante nuestra consideración, la forma de interpretación más lógica de hacerlo lo es resolviendo que cuando el legislador quiso que los empleados públicos, o algunos de ellos, estuviesen cobijados por la legislación en controversia así *expresamente* lo hizo constar. *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486 (1990).