Gilberto Gierbolini, Juez Ponente
*893 TEXTO COMPLETO DE LA RESOLUCION
El 8 de mayo de 2003, María Cruz Cintrón presentó Petición de Certiorari en la que nos solicitó la revocación de la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 4 de abril de 2003 y notificada el 9 de abril de 2003. Mediante dicha Resolución, el tribunal a quo dejó sin efecto la anotación de rebeldía impuesta a la otra parte.
Por los fundamentos que expondremos a continuación, DENEGAMOS la expedición del Auto de Certiorari solicitado.
I
El 27 de agosto de 2002, María Cruz Cintrón presentó querella por discrimen por impedimento contra el Departamento de Salud del Estado Libre Asociado de Puerto Rico (en adelante el ELA.), Luz Delia Sánchez, por sí y como Secretaria Auxiliar de Enfermería, el señor Sánchez y la Sociedad de Gananciales compuesta por ambos, bajo el procedimiento sumario establecido en la Ley Número 2 de 17 de octubre de 1961, 32 L.P.R.A. Sección 3118 et seq. Cruz alegó que prestaba servicios en el Centro de Diagnóstico y Tratamiento de Yabucoa desde febrero de 1998 con un salario mensual de $1,324.00 y que en mayo de 2002, la querellada discriminó contra ella al cambiar su tumo fijo de lunes a viernes de 7:00 AM a 3:00 PM, el cual trabajaba desde el 1993 debido a una certificación médica, por tumos rotativos de 3:00 PM a 11:00 PM y de 11:00 PM a 7:00 AM. Cmz solicitó una orden del tribunal para que la querellada la reasignara al tumo fijo y reclamó $75,000.00 por los daños sufridos, más el pago de honorarios de abogado y el interés legal correspondiente.
El 26 de septiembre de 2002, Cmz presentó moción en solicitud de anotación de rebeldía debido a que habían transcurrido los 10 días que dispone la Ley Número 2 de 17 de octubre de 1961, supra, para contestar la querella sin que el ELA contestara la misma o solicitara prórroga para contestar, y solicitó declarar con lugar la querella, emitir sentencia en rebeldía en cuanto a la responsabilidad de la querellada y señalar vista de daños. El 1 de octubre de 2002, el Tribunal de Primera Instancia emitió orden, notificada el 21 de octubre de 2002, en la que concedió 10 días al ELA para mostrar causa por la cual no debía serle anotada la rebeldía.
El 25 de octubre de 2002, Cmz presentó memorando de derecho en el que solicitó nuevamente la anotación de rebeldía. El 30 de octubre de 2002, Cmz presentó moción en desistimiento de la acción sin perjuicio contra Luz Delia Sánchez, el señor Sánchez y la Sociedad Legal de Gananciales compuesta por ambos. En esa misma fecha, el Tribunal de Primera Instancia ordenó al ELA replicar en 20 días al memorando de derecho presentado por la querellante. Dicha orden fue notificada el 5 de noviembre de 2002.
El 5 de noviembre de 2002, el Tribunal de Primera Instancia emitió orden, notificada el 7 de noviembre de 2002, para que las partes afectadas expresaran su posición en 20 días. El 7 de noviembre de 2002, el ELA presentó moción en solicitud de prórroga para contestar la querella debido a que las agencias pertinentes no habían suministrado la información necesaria para contestar la querella.
El 14 de noviembre de 2002, el Tribunal de Primera Instancia emitió orden, notificada el 18 de noviembre de 2002, en la que exigió al ELA cumplir con la orden emitida el 5 de noviembre de 2002. El 26 de noviembre de 2002, el ELA presentó moción en solicitud de orden para que las otras partes en el caso notificaran los escritos presentados y solicitó un término de 20 días contados a partir del recibo de dichos escritos para replicar a los mismos.
El 2 de diciembre de 2002, Cruz presentó una tercera moción en donde solicitó anotación de rebeldía, *894 sentencia en cuanto a la responsabilidad de la parte querellada y una vista para dilucidar y cuantificar los daños. El 6 de diciembre de 2002, el Tribunal de Primera Instancia emitió orden, notificada el 11 de diciembre de 2002, mediante la cual anotó la rebeldía a la parte querellada y señaló vista en rebeldía para el 24 de febrero de 2003.
El 11 de diciembre de 2003, el ELA presentó contestación a la querella, moción aclaratoria y réplica a la moción en solicitud de anotación de rebeldía, en la que señaló que su representante legal estuvo de vacaciones desde el 8 de noviembre de 2002 hasta el 2 de diciembre de 2002, fecha en que recibió las órdenes del tribunal. Además, informó que no ha recibido el memorando de derecho ni las primeras dos mociones en solicitud de anotación de rebeldía presentada por la querellante; el procedimiento sumario de la Ley Número 2 de 17 de octubre de 1961, supra, sólo aplica al sector privado; por ende, resulta improcedente anotar la rebeldía; no discriminó de manera alguna contra la querellante ni incurrió en ningún acto u omisión culposo o negligente; y no puede ser condenado al pago de honorarios de abogado ni procede la imposición de intereses legales. Por último, solicitó la desestimación de la querella.
En esa misma fecha, el Tribunal de Primera Instancia contestó la moción presentada por el ELA en solicitud de orden para notificar los escritos mediante orden refiriéndolos a la orden emitida el 6 de diciembre de 2002. Dicha orden fue notificada el 13 de diciembre de 2002. El 20 de diciembre de 2002, Cruz presentó moción en oposición a la moción aclaratoria en la que alegó que la reclamación está basada en la Ley Número 44 de 2 de julio de 1985, mejor conocida como Ley Contra el Discrimen en el Empleo de las Personas con Impedimentos, 1 L.P.R.A. Sección 501 et seq., que pone a su disposición el procedimiento sumario y aplica al ELA, sus agencias e instrumentalidades.
El 2 de enero de 2003, el ELA presentó moción en solicitud de reconsideración para dejar sin efecto la anotación de rebeldía. El 24 de febrero de 2003, el Tribunal de Primera Instancia celebró vista en la que discutió la moción aclaratoria presentada por el ELA y la moción en oposición a la misma presentada por la querellante. El tribunal dispuso que las partes debían celebrar reunión para tratar de llegar a un acuerdo y buscar un remedio en tomo al acomodo razonable; concedió un término de 20 días para someter sendos memorandos de derecho para completar sus planteamientos.
El 19 de marzo de 2003, el ELA presentó moción para informar que la querellante no había asistido a una evaluación médica para determinar su condición, le habían eliminado el turno de noche a la querellante y ésta siempre había cobrado su sueldo completo. El 21 de marzo de 2003, Cruz presentó moción en cumplimiento de orden en la que señaló que el tribunal no tenía jurisdicción para dejar sin efecto la rebeldía debido a que la Ley Número 2 de 17 de octubre de 1961, supra, lo impide, ya que la moción de reconsideración había sido presentada fuera de término.
El 4 de abril de 2003, el Tribunal de Primera Instancia emitió resolución, notificada el 9 de abril de 2003, mediante la cual dejó sin efecto la anotación de rebeldía impuesta al ELA, ordenó la continuación de los procedimientos por la vía ordinaria, ordenó a las partes completar el descubrimiento de prueba en 60 días y señaló vista de conferencia con antelación al juicio para el 8 de agosto de 2003. Inconforme con dicha determinación, el 8 de mayo de 2003, Cruz acudió ante nos mediante petición de certiorari en la que nos solicitó la revocación de la resolución emitida por el Tribunal de Primera Instancia a quien imputa la comisión del siguiente error:

“Erró el tribunal recurrido al dejar sin efecto la anotación de rebeldía y negarse a emitir sentencia contra la parte querellada, luego de ésta haber sido emplazada conforme a las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961 y no contestar la querella ni solicitar prórroga juramentada dentro del término jurisdiccional. ”

II
En Puerto Rico, el estatuto de mayor importancia en relación con las disposiciones contra el discrimen en el empleo es la Constitución del Estado Libre Asociado de Puerto Rico, pero existen otras leyes que cubren de *895 forma más abarcadora y específica algunas otras formas de discrimen. Por ejemplo, con el propósito de extender el alcance de los postulados contra el discrimen a los talleres de trabajo en Puerto Rico, el 30 de junio de 1959 fue aprobada la Ley Número 100, mejor conocida como Ley Contra el Discrimen en el Empleo, 29 L.P.R.A. Sección 146 et seq. Dicho estatuto provee un mecanismo administrativo y un procedimiento legal para darle vigencia a la Sección 1 del Artículo II de la Constitución de Puerto Rico dentro del contexto obrero patronal. El propósito de esta ley es “dotar a la clase obrera con los instrumentos necesarios para protegerlos del discrimen por razón de edad, raza, color, sexo, origen social o nacional, condición social e ideas políticas o religiosas, ” Cardona v. Depto. Recreación y Deportes, 129 D.P.R. 557, 566-567 (1991), citando a García Pagán v. Shiley Caribbean, Etc., 122 D.P.R. 193, 198-199 (1988).
El Artículo 1 de la Ley Número 100, 29 L.P.R.A. Sección 146, dispone que todo patrono que despida, suspenda o discrimine contra un empleado con relación al salario, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique a sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su “status” como empleado, por razón de raza, edad, color, sexo, origen social o nacional, condición social, ideas políticas o religiosas del empleado o solicitante de empleo, incurrirá en responsabilidad civil y en delito menos grave. Por lo que crea una causa de acción civil y otra de carácter penal contra todo patrono que incurra en conducta discriminatoria, García Pagán v. Shiley Caribbean, Etc., supra, a las páginas 199-200.
Por otra parte, el Inciso (2) del Artículo 6 de la ley, 29 L.P.R.A. Sección 151 (2), incluye en su definición de lo que constituye un patrono “a toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica "ya “aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas. ”
En Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 508 (1990), el Tribunal Supremo interpretó el alcance del término patrono y concluyó que el objetivo principal de esta ley “es proteger a los empleados de la empresa privada contra todo tipo de discrimen, aun cuando, por excepción, se extiende la protección a los empleados de las agencias o instrumentalidades del Gobierno que operan como negocios o empresas privadas.” También afirmó que la frase agencias o instrumentalidades del Gobierno que operan como negocios o empresas privadas hace referencia únicamente a las corporaciones públicas del Estado Libre Asociado. Por lo que no incluye a las otras agencias del Gobierno dentro del término patrono, Id., a la página 509.
En el caso de autos, la parte querellante alegó discrimen por impedimento al amparo de la Ley Número 44 de 2 de julio de 1985, 1 L.P.R.A. Sección 501 et seq., de la Ley 100 de 30 de junio de 1959, supra, y acogió el procedimiento sumario establecido en la Ley de Reclamaciones por Servicios Prestados, Ley Número 2 de 17 de octubre de 1961, 32 L.P.R.A. Sección 3118 et seq. Sin embargo, en vista que el Departamento de Salud es una agencia gubernamental, .el empleado no podía utilizar el procedimiento de la Ley Número 100, supra, y tampoco podía incoar un procedimiento sumario al amparo de la Ley Número 2, supra.
La Ley Número 2 de 17 de octubre de 1961, supra, provee un mecanismo sumario en aquellos casos en que “un obrero o empleado tuviere que reclamar de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizadas por dicho patrono o por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo sin causa justificada, ” Sección 1 de la Ley Número 2, 32 L.P.R.A. Sección 3118. Su fin primordial: el proveer al obrero un mecanismo procesal acortado para facilitar y aligerar el trámite de sus reclamaciones laborales. Este procedimiento limita el uso de las reglas procesales y sitúa al patrono en una posición procesalmente más onerosa que la del obrero, Rivera v. Insular Wire Products Corp., 140D.P.R. 912,-923-924 (1996).
Por lo que no cabe duda que esta ley es un mecanismo procesal de suma importancia, producto de una sana *896 política pública que busca diligencia y prontitud en la tramitación judicial de las reclamaciones laborales, Mercado Cintrón v. Zeta Com. Inc., 135 D.P.R. 737, 742 (1994). No obstante, no podemos pasar por alto que el procedimiento sumario dispuesto por dicha ley está previsto para casos de reclamaciones laborales de beneficios o derechos de los empleados del sector privado, Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257, 274-275 (1996). La propia ley define obrero como “todo trabajador manual, de cualquier sexo y a aquellas personas naturales que estuvieren empleadas en servicios u ocupaciones domésticas, ” mientras que empleado es, en su sentido amplio, “toda clase de artesano, empleado o dependiente de comercio o industria, ” Sección 2 de la Ley Número 2, 32 L.P.R.A. Sección 3119. Por sus propios términos excluye a los empleados del ELA e incluye solamente a los que trabajan en el comercio o en la industria.
Actualmente en Puerto Rico, una persona con impedimento posee dos remedios contra actuaciones discriminatorias de un patrono: uno estatal y otro federal. El remedio federal está contenido en la Americans with Disabilities Act (A.D.A.), 42 U.S.C.A. 12112 et seq., mientras que el remedio estatal lo provee la Ley Número 44 de 2 de julio de 1985, mejor conocida como Ley Contra el Discrimen en el Empleo de las Personas con Impedimentos, supra, Rivera Flores v. Cía. ABC, 138 D.P.R. 1, 5 (1995).
La Ley Número 44 de 2 de julio de 1985, supra, aunque no es de carácter específico contra el discrimen en el empleo, contiene disposiciones en este sentido, ya que fue aprobada con el fin de proteger a las personas con impedimentos físicos o mentales y ampliar sus oportunidades de empleo, García v. Darex P.R., Inc., 148 D.P.R. 364, 385 (1999): Dicha ley prohíbe que cualquier persona natural o jurídica, por sí o a través de otra, impida, obstaculice, limite o excluya a otra persona con impedimentos físicos, mentales o sensoriales por el mero hecho de tales impedimentos, de participar, formar parte o disfrutar en o de cualesquiera programas o actividades organizadas, patrocinadas, operadas, implantadas, administradas o de cualquier otra forma dirigidas o llevadas a cabo por cualquier institución pública o privada que reciba fondos del Estado Libre Asociado de Puerto Rico, Artículo 2 de la Ley Número 44, 1 L.P.R.A. Sección 502. Además, impone la obligación a todo patrono de “llevar a cabo acomodos razonables en el lugar de trabajo para asegurar que se les permita a las personas con impedimentos, cualificadas para trabajar efectivamente al máximo de su productividad, excepto cuando el patrono pueda demostrar que tal acomodo razonable representará un esfuerzo extremadamente oneroso en términos económicos para la empresa, ” Artículo 9 de la Ley Número 44,1 L.P.R.A. Sección 507 (a).
Al amparo de esta Ley serán consideradas personas con impedimentos físicos, mentales o sensoriales todas aquellas personas con impedimentos de naturaleza motora, mental o sensorial, que obstaculicen o limiten su inicio o desempeño laboral, de estudios o el disfrute pleno de la vida, y que está cualificada para llevar a cabo las funciones básicas de ese trabajo o área de estudio, con o sin acomodo razonable, Artículo 1 de la Ley Número 44,1 L.P.R.A. Sección 501 (d). El Inciso (b) del Artículo 1 de la ley, 1 L.P.R. A. Sección 501 (b), define acomodo razonable como “el ajuste lógico adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, mentales o sensoriales ejecutar o desempeñar las labores asignadas a una descripción o definición ocupacional. Incluye ajustes en el área-de trabajo, construcción de facilidades físicas, adquisición de equipo especializado, proveer lectores, ayudantes conductores o intérpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales en su trabajo y que no representa un esfuerzo extremadamente oneroso en términos económicos
La obligación del patrono de proveer acomodos razonables a los empleados con impedimentos no es absoluta. Tal obligación patronal queda definida en la ley a la luz de la naturaleza y el costo del acomodo requerido, los recursos económicos del patrono y el tipo de negocio, Artículo 1 de la Ley Número 44, 1 L.P.R. A. Sección 501 (b) y (g). En resumen, para quedar cobijado por la Ley Número 44, y que el patrono esté obligado a brindar acomodo razonable conforme.-a la ley, el empleado tendrá que demostrar que es una persona con impedimento según lo define la ley; y que está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el acomodo razonable, García v. Darex P.R., Inc., supra, a las páginas 385-386.
*897 El Artículo 13 de la Ley Número 44, 1 L.P.R.A. Sección 511, incorporó a dicho estatuto los remedios, facultades y procedimientos establecidos en la Ley Número 100 de 30 de junio de 1959, supra. Por esta razón es que una reclamación al amparo de la Ley Número 44, supra, podría ser tramitada por vía judicial mediante acción ordinaria o mediante el procedimiento de querella establecido en la Ley Número 10 de 14 de noviembre de 1917, según enmendada, Artículo 4 de la Ley Número 100, 29 L.P.R.A. Sección 149. Las agencias ante las cuales el empleado puede presentar una querella son el Departamento del Trabajo y Recursos Humanos y la Oficina del Procurador de las Personas con Impedimentos. El Departamento del Trabajo ejerce jurisdicción sobre los patronos privados y las corporaciones públicas; mientras que la Oficina del Procurador de las Personas con Impedimentos la ejercerá sobre las demás agencias gubernamentales. Si el empleado no desea presentar querella puede presentar una acción civil ante el Tribunal de Primera Instancia, la cual será tramitada mediante el procedimiento ordinario; no mediante el procedimiento sumario.
En conclusión, la causa de acción incluida en la querella presentada por Cruz debe ser tramitada de forma ordinaria, lo que implica que los términos aplicables al proceso judicial de autos son los establecidos en las Reglas de Procedimiento Civil, 32 L.P.R.A. Apéndice III. Los términos más cortos que establece la Ley Número 2, supra, resultan, en consecuencia, inaplicables para hacer una determinación en torno a si procede anotar la rebeldía a la parte querellada.
III
Por los fundamentos anteriormente expuestos, DENEGAMOS la expedición del Auto de Certiorari.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Peana Oquendo Graulau
Secretaria General